Marina **GRAUBERGER**, Plaintiff,

v.

**ST. FRANCIS HOSPITAL, Catholic Health Care West, Defendants.**

No. C00–2625 TEH.

United States District Court, N.D. California.

Nov. 6, 2001.

Laurence F. Padway, Law Office of Laurence F. Padway, Alameda, CA.

Barry Landsberg, Harvey L. Rochman, Andrew H. Struve, Manatt, Phelps & Phillips, LLP, Los Angeles, CA.

## ORDER

HENDERSON, District Judge.

This matter came before the Court on November 5, 2001, on (1) defendants' motion to dismiss plaintiff's second amended complaint, and vacate the June 15, 2001 partial summary judgment order, and (2) Plaintiff's motion for permanent injunction and restitution. Having carefully consid-

ered the written and oral arguments of counsel, the governing legal authority, and the record herein, the Court grants defendants' motion to dismiss in part, vacates the June 15, 2001 partial summary judgment ruling, and remands this action to the Superior Court for the County of San Francisco. The Court does not reach plaintiff's motion for injunctive relief and restitution.

## BACKGROUND

As set forth in the complaint, the basic facts underlying this case are as follows: Plaintiff, Marina Grauberger, was injured in an automobile accident on January 14, 1998. She was treated for her injuries by defendant, St. Francis Hospital. Her insurer, Blue Cross, paid the hospital its negotiated rates in full except for the deductible amounts and co-payments, which plaintiff paid herself. Plaintiff later sued the driver who allegedly caused the accident ("tortfeasor"). St. Francis hospital then filed a lien in that action pursuant to the Hospital Lien Act ("HLA"), Calif. Civil Code §§ 3045.1–3045.6, seeking to recover the difference between St. Francis "normal rates" and the lower, negotiated rates that it charged plaintiff pursuant to her Blue Cross plan. The tortfeasor and plaintiff settled for $100,000. Plaintiff, however, disputed the validity of lien. Accordingly, the parties agreed to place the disputed amount at issue ($31,747.74) in trust pending litigation of the matter.

On March 17, 2000, plaintiff filed the instant action in San Francisco Superior Court challenging the validity of the lien on numerous grounds. Defendants removed the action to federal court on the ground that plaintiff's first amended complaint asserted a federal question under the Racketeer Influenced and Corrupt Or-

ganizations Acto ("RICO"), 18 U.S.C. § 1961 et seq. Thereafter, defendants moved to dismiss the complaint on the grounds that the RICO claim failed as a matter of law, that the state law claims were preempted by ERISA and barred by privilege, and that the state law claims were otherwise defective as a matter of law. The Honorable Judge Charles Legge, who was presiding over the case at the time,[1] decided to defer ruling on the motion to dismiss, and to instead address the legal question of the validity of the lien. He informed the parties that if he ruled in defendants' favor on this legal issue, it would effectively end the case, and that if he ruled for plaintiff on this issue, he would return to the issues raised by defendants' motion to dismiss.

On June 15, 2001, Judge Legge ruled that the HLA did not authorize the lien at issue and ordered that the $31,747.74 held in trust be released to plaintiff. He did not, however, rule on the legal sufficiency of any of the claims asserted in the complaint. Shortly thereafter, defendants renewed their motion to dismiss this action on the same grounds asserted in their original motion. They further argue that, if the court finds that it lacks federal question jurisdiction, and declines supplemental jurisdiction, the June 15, 2001 order should be vacated. Plaintiff simultaneously moves for a permanent injunction and restitution.

## DISCUSSION

### A. *Defendants' Motion to Dimiss*[2]

#### 1. *RICO Claim*

Under well settled law, a plaintiff seeking to assert a RICO claim must demonstrate (1) the conduct, (2) of an enterprise, (3) through a pattern; (4) of racke-

---

1. The case was later reassigned to the undersigned upon Judge Legge's retirement from the bench.

2. Plaintiff asserts that this Court lacks jurisdiction to rule on defendants' motion to dis-

miss and vacate the June 15, 2001 order because defendants' interlocutory appeal of

teering activity. *Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). In addition, other requirements apply to the specific subsections of RICO. *See* 18 U.S.C. §§ 1962(a), (b), (c), (d). For the reasons set forth below, the Court finds that plaintiff can not satisfactorily allege any racketeering activity, a necessary element of any RICO claim. In addition, plaintiff's RICO claim suffers from other defects as well.

### (a) *Racketeering Activity*

■ Racketeering activity "is any act indictable under various provisions of 18 U.S.C. § 1961." *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1481 (9th Cir.1997). In other words, the racketeering activity must amount to, or pose a threat of, continued criminal activity. Here, plaintiff contends that defendants' conduct constitutes racketeering because it constitutes mail fraud, 18 U.S.C. § 1341, and extortion under the Hobbs Act, 18 U.S.C. § 1951.

■ As an initial matter, plaintiff's general and conclusory assertions of "fraudulent liens" and a "double billing scheme," *see* SAC ¶ 36, are insufficient to show that defendants engaged in "racketeering activity." *See e.g. Alan Newman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988) (conclusory allegations of fraud

that do not comply with Fed.R.Civ.P. 9(b) particularity requirements are a "fatal defect" when seeking to sustain a RICO claim); *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir.1994) ("conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim"); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1400 (9th Cir.1986) (RICO claim based on fraud must be plead with particularity sufficient to satisfy Fed. R.Civ. p. 9(b)).

■ Even if the Court considers the more detailed allegations set forth in plaintiff's RICO case statement and opposition papers, it is plain that plaintiff can not satisfactorily allege either mail fraud or a violation of the Hobbs Act. With respect to mail fraud, plaintiff must prove a scheme to defraud with the specific intent to defraud. *Forsyth,* 114 F.3d at 1480; 18 U.S.C. § 1341. Plaintiff asserts that the lien filed by St. Francis Hospital (through the mail) was a "fraudulent lien" because defendants knew the amount stated on the bill exceeded the amount that it had agreed to accept pursuant to Grauberger's insurance contract, and therefore was excessive and constituted double billing. *See* RICO Case Statement ¶ 1 at page 2.[3] While this is plaintiff's legal theory, it fails

---

the June 15, 2001 order is currently pending in the Ninth Circuit Court of Appeals. An appeal from an interlocutory order does not, however "stay the proceedings, as it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." *Plotkin v. Pacific Tel. and Tel. Co.,* 688 F.2d 1291, 1293 (9th Cir.1982). Here, defendants' motion to dismiss does not implicate the issues raised by defendants' interlocutory appeal. Accordingly, the Court is not divested of jurisdiction to proceed with the instant motion.

**3.** The RICO case statement states that "Plaintiffs allege that defendants, by use of the United State mail, submit fraudulent, inflated billings for medical services in circumstances where they have great and unfair leverage to secure payment from their patients. Specifically, defendants, having been paid in full for medical services ... submit an inflated bill double or more the reasonable value of the services rendered and then serve by mail liens for these inflated bills pursuant to Cal.Civ. Proc [sic] 3045.1. Defendants serve these invalid liens in cases where their patients bring suit against third parties for tortiously causing the injury for which defendants provided medical treatment. defendants file these liens even after they have acknowledged payment in full of the debt owed by the patients."

to demonstrate that defendants engaged in a scheme to defraud the plaintiff.

First, despite repeated assertions of "fraud" and "double billing," SAC at ¶ 36, plaintiff's claim, at bottom, turns on issues of statutory interpretation. The Hospital Lien Act expressly provides that where a party treated by a hospital for injuries suffered by reason of an accidental, negligent or wrongful act subsequently files a claim for damages against a tortfeasor, the hospital may file a lien against the claim for damages for its "reasonable and necessary charges." Cal.Civ.C. § 3045.1[4] The dispute between the parties in this case centers on the proper interpretation of this Act. Plaintiff argues that the Act should be construed to preclude hospitals from filing a lien under the HLA where the hospital has already recovered the negotiated rate pursuant to the insured's insurance plan. St. Francis Hospital contends that the Act permits such liens. So far, state and federal trial courts have had differing opinions on this unsettled issue of state law, and there is no published state law precedent.[5] Surely, Congress did not intend to turn garden variety disputes over statutory interpretation into criminal acts sufficient to justify a RICO claim see Smith v. Jackson, 84 F.3d 1213 (9th Cir.1996) (garden variety copyright infringement claim should not be transformed into RICO action).[6]

Second, plaintiff fails to identify any misrepresentation made to plaintiff of a material fact that she relied upon to her detriment. On the contrary, the complaint indicates that plaintiff was fully aware that she had discharged her debt to St. Francis Hospital, and that the hospital had nonetheless filed a lien asserting that the tortfeasor still owed additional, excessive amounts. See SAC ¶ 7 ("defendants sent a statement to Ms. Grauberger showing her account had a zero balance due"), ¶ 9 (alleging that defendants filed a lien double billing plaintiff for excessive amounts). Plaintiff does argue that the lien improperly concealed *from the tortfeasor*, the fact that the plaintiff had discharged her debt to St. Francis Hospital. Any claim of fraud against the third-party tortfeasor, however, is not before Court.[7]

4. The HLA states in pertinent part:
   "Every person, partnership, association . . . . or other institution or body maintaining a hospital licensed under the laws of this state which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act . . . . shall if the person has a claim against another for damages on account of his or her injuries, have a lien upon the damages recovered, or to be recovered, by the person . . . . to the extent of the amount of the reasonable and necessary charges of the hospital . . ."

5. *See* Judge Legge's June 15, 2001 Order at 8 ("The statute gives a hospital a lien for its services from payments made by a tortfeasor. But it does not say what occur when the hospital's services have already been paid by the patient or her insurer. And research has disclosed no cases answering the question"). Apparently, state court trial decisions have found in defendants' favor, *see Id.* at 12, Def's

Mem. in Support of Mtn to Dismiss at 4, n. 5, while Judge Legge has ruled in favor of plaintiff.

6. Plaintiff also argues that the fees St. Francis Hospital seeks to collect through the lien are excessive and unreasonable and that this raises a separate issue totally apart from any issue raised by the Hospital Lien Act. This court disagrees. Whether the amounts asserted in the lien at issue are excessive—or are "reasonable and necessary charges" as allowed by the Hospital Lien Act—raises issues implicating the meaning of the phrase "reasonable and necessary charges." Furthermore, the Court is not persuaded that a billing dispute over the reasonableness or excessiveness of specific hospital charges rises to the level of a criminal act for purposes of RICO liability.

7. The Court notes that plaintiff's suggestion, at oral argument, that she could possibly plead a claim alleging that the third-party

Finally, plaintiff's heavy reliance on *Forsyth v. Humana Inc.*, 114 F.3d 1467 (9th Cir.1997) is misplaced. While *Forsyth* and the instant case both concern hospitals and health insurance, the similarities end there. In *Forsyth*, the insureds contracted for health insurance, through employee benefits plans, with Humana Insurance. The insureds (referred to as the "co-payor plaintiffs"), were responsible for a 20% co-payment on hospital charges they incurred at Sunrise Hospital, owned by Humana Inc. Plaintiffs alleged that Humana Insurance negotiated discounted rates with Sunrise Hospital, but the two colluded to conceal this agreement from the insureds. As a result, the co-payor plaintiffs paid significantly more than their 20% co-payment share. Unlike *Forsythe*, however, this case does not involve a *secret* discriminatory pricing scheme that was intentionally concealed from, and used to deceive, the plaintiff. Nor were the defendants in *Forsythe* alleging that their actions were expressly authorized by statute. Accordingly, *Forsythe* provides scant precedent for the case at bar.

■ Plaintiff's reliance on the Hobbs Act fares no better. This Act makes it a crime to, *inter alia*, obstruct or affect commerce by extortion. 18 U.S.C. § 1951(a)LQ. The term "extortion" means the obtaining of property from another with his consent induced by wrongful use of . . . . force, violence, or fear, or under color of official right. Plaintiff alleges that the filing of the lien was an attempt to obtain plaintiff's property through consent induced by "fear" or "under color of official right." SAC ¶ 36(c). Neither provision, however, applies to the case at bar.

■ First, the weight of authority holds that the filing of a legal claim does not implicate the "fear" provision of the

Hobbs Act. In *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984), for example, the Court rejected the argument that the threat of legal action, for the purpose of frightening the plaintiff into making payments, did not amount to the infliction of "fear" within the meaning of the Hobbs Act:

> We can not agree that the threat alleged here constituted the infliction of 'fear' for purposes of the extortion [Hobbs] statute. We assume for purposes of argument . . . that the threat to sue was groundless and made in bad faith. Such conduct may be tortious under state law, but we decline to expand the federal extortion statute to make it a crime.

*Id.* at 267. The Court therefore concluded that the threats to sue did "not qualify as acts of racketeering bringing RICO into play." *Id.* at 266. The Court noted that if it were to hold that threats to file a civil action constituted a "pattern of racketeering activity," citizens "might feel that their right of access to the courts of this country had been severely chilled." *Id.* at 267. Indeed, this Court readily agrees that allegations of improper legal filings, which are inevitably ubiquitous in a litigious society, are best addressed through state law tort remedies rather than resort to criminal statutes and RICO claims. *See also Peterson v. Philadelphia Stock Exchange*, 717 F.Supp. 332, 336 (E.D.Pa.1989) ("The ordinary resort to legal process does not rise to the level of a 'wrongful use' of force or fear.") (citation omitted); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, * 4 (N.D.Il. .1994) (and cases cited therein) (alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO).

---

tortfeasor and the defendants, together, constitute a RICO enterprise appears to grossly violated the intended parameters of RICO, and border on the frivolous.

Nor can plaintiff invoke the "under color of official right" provision. That language requires that the defendant "actually exercise[ ] official powers, regardless of whether those powers were conferred by election, appointment, or some other method." *U.S. v. Freeman,* 6 F.3d 586, 593 (9th Cir.1993). Here, plaintiff has not, and can not, allege that defendants—which are both private corporations—actually exercised official powers by election, appointment or some other method. Indeed, plaintiff's papers do not attempt to argue that this element of the Hobbs Act can be satisfied here.

In sum, while defendants' alleged conduct may potentially support a claim for relief under California law, given all of the above, the Court is not persuaded that it rises to the level of criminal activity. In particular, plaintiff's allegations do not demonstrate that defendants committed either mail fraud or extortion, as defined by 18 U.S.C. § 1341 and 18 U.S.C. § 1951. Accordingly, plaintiff has not established any predicate acts of "racketeering" under 18 U.S.C. § 1961. Nor does it appear that plaintiff can cure this deficiency through additional good faith pleading. The RICO claim must therefore be dismissed with prejudice for failure to state a claim for relief.

#### (b) *Other pleading defects*

While the Court's conclusion above is dispositive of defendants' motion to dismiss plaintiff's RICO claim, the Court notes that portions of her claim suffer from other flaws as well. First, plaintiff's claim under § 1962(a) fails for failure to plead an investment injury. Courts have split as to whether a section 1962(a) claim can be pled based on damages directly caused by the alleged predicate acts or whether the plaintiff must allege facts showing that he was injured by the defendant's *use or investment* of racketeering income. The Ninth Circuit, however, has hewed to the latter, narrower interpretation. *Nugget Hydroelectric, L.P., v. Pacific Gas & Electric Co.,* 981 F.2d 429, 437 (9th Cir.1992); *see also Grider v. Texas Oil,* 868 F.2d at 1148 (10th Cir.1989) (same). Here, plaintiff alleges only that defendants invest the funds obtained by the alleged pattern of racketeering to operate hospitals owned and operated by defendants. *See* SAC § 37; *see also* Rico Case Statement at ¶ 1, page 2. Plaintiff does not allege that she has been injured by this investment activity; nor does it appear that she could do so. Rather, she only alleges that she was damaged by the alleged predicate acts. *See* SAC ¶ 38.

Second, plaintiff's claim under § 1962(d), which prohibits a racketeering conspiracy, can not be sustained as pled. Plaintiff's SAC makes only the conclusory allegation that "defendants conspire with each other and with the organizations in the Enterprise to conduct the Enterprise in violation of 18 U.S.C. § 1961(d)." SAC ¶ 37. Plaintiff's Rico Case Statement is similarly lacking in specifics. It states only that defendants violated 18 U.S.C. § 1962(d) because "they conduct the pattern of racketeering through agreements with approximately 70 separate hospital boards which govern the operation of the subsidiaries and affiliates of defendant Catholic Healthcare West." Rico Case Statement ¶ 1, page 3. This type of summary pleading is insufficient to support a RICO claim.

#### 2. *Supplemental Jurisdiction*

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction over state law claims if (1) they raise novel or complex issues of state law, (2) the state claims substantially predominate over the federal claims, (3) the district court has dismissed all of the federal claims, or (4) in exceptional circumstances,

other compelling reasons justify declining jurisdiction. While the presence of any one of these four factors may be sufficient grounds to decline supplemental jurisdiction, in this case, three of the four factors apply.

First, plaintiff's RICO claim provided the only basis for federal jurisdiction over the state law claims set forth in the complaint. Now that the RICO claim must be dismissed, it is appropriate to decline jurisdiction over the remaining state law claims. Second, the state law claims raise important issues of state law that have yet to be definitively addressed by a state appellate court, and are more appropriately resolved by the state courts. Third, the seven state law claims predominate over the RICO claim. Indeed, as discussed above, it is clear that this case turns on issues of state law. The Court also notes that, notwithstanding Judge Legge's ruling, discovery has not yet commenced. Finally, the fact that this case was removed significantly alleviates any prejudice to the plaintiff since the state claims can be remanded, rather than dismissed, and plaintiff will return to the original forum of her choice.

Plaintiff argues that Judge Legge's ruling on the HLA justifies retaining supplemental jurisdiction. While the Court has considered this as a factor, it concludes that it is outweighed by the other factors identified above.

For all of these reasons, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. As such, the Court does not reach defendants' arguments regarding dismissal of the remaining state law claims.

B. *Defendant's Motion to Vacate Partial Summary Judgment*

■ The Court's decision to dismiss the RICO claim and decline supplemental jurisdiction necessarily divests the Court of power to address the merits of plaintiff's claims. *See Axess Int'l Ltd. v. Intercargo Insur. Co.*, 183 F.3d 935, 943–44 (9th Cir. 1999) ("once the district court chose not to exercise supplemental jurisdiction over [plaintiff's] supplemental state law claims, it lacked the power to adjudicate the merits of these claims"). Thus, any ruling previously made on the merits must be vacated. *Id.* at 944 (vacating portion of district court's order that addressed merits of state law claims); *see also Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309–10 (10th Cir. 1998); *Nelson v. Upsala College*, 51 F.3d 383, 389–90 (3rd Cir.1995). Accordingly, defendants' motion to vacate the June 15, 2001 partial summary judgment order must be granted.

C. *Plaintiff's Motion For Permanent Injunction and Restitution*

In light of the foregoing, the Court does not reach plaintiffs' Motion for Permanent Injunction and Restitution.

**CONCLUSION**

For the reasons set forth above, and good cause appearing, it is HEREBY ORDERED that;

(1) Plaintiffs' RICO claim is dismissed with prejudice. Defendants' Motion to Dismiss is otherwise denied without prejudice.

(2) The Court declines supplemental jurisdiction over plaintiff's state law claims.

(3) The partial summary judgment ruling entered on June 15, 2001 is vacated.

(4) The Court does not reach plaintiff's Motion for Permanent Injunction and Restitution.

(5) This case is REMANDED FORTH-WITH to the Superior Court for the County of San Francisco, California.

IT IS SO ORDERED.