[No. S114888. Apr. 4, 2005.]

JOEL K. PARNELL, Plaintiff and Appellant, v.
ADVENTIST HEALTH SYSTEM/WEST et al., Defendants and
Respondents.

COUNSEL

King & Hanagami, William K. Hanagami; Law Offices of Ralph B. Wegis and Ralph B. Wegis for Plaintiff and Appellant.

Ian Herzog; Sharon Arkin; David Rosen; James Sturdevant; Bruce M. Brusavich; Donald de Camara; Scott H. Z. Sumner; Dan Wilcoxen; Lea-Ann Tratten; Enser & Chang and Stuart B. Esner for Consumer Attorneys of California as Amici Curiae on behalf of Plaintiff and Appellant.

Latham & Watkins, Robert D. Crockett, Sara Mars; Law Offices of Deborah Giles and Deborah Giles for Defendants and Respondents.

Manatt, Phelps & Phillips, Barry S. Landsberg and Joanna S. McCallum for Catholic Healthcare West, Scripps Health and the Regents of University of California as Amici Curiae on behalf of Defendants and Respondents.

Lois Richardson for California Healthcare Association as Amicus Curiae on behalf of Defendants and Respondents.

Friestad & Giles, Deborah Giles and Christine Friestad for Scripps Health as Amicus Curiae on behalf of Defendants and Respondents.

Dennis J. Herrera, City Attorney (San Francisco), Joanne Hoeper and David B. Newdorf, Deputy City Attorneys; Manuela Albuquerque, City Attorney (Berkeley); and Casey Gwinn, City Attorney (San Diego), for City and County of San Francisco and League of California Cities as Amici Curiae.

Horvitz & Levy, Lisa Perrochet, H. Thomas Watson and Orly Degani for Association of California Insurance Companies, Personal Insurance Federation of California and American Insurance Association as Amici Curiae.

## OPINION

**BROWN, J.**—Under the Hospital Lien Act (HLA; Civ. Code, §§ 3045.1–3045.6),[1] a hospital that treats a patient injured by a third party tortfeasor may assert a lien against any judgment, settlement, or compromise recovered by that patient from the tortfeasor in the amount of its "reasonable and necessary charges" (§ 3045.1). In this case, a hospital received payment from a patient and his health insurer and agreed to accept that payment as "payment in full" for its services. Nonetheless, the hospital asserted a lien under the HLA, seeking to recover the difference between its usual and customary charges and the amount received from the patient and his insurer. We now consider whether the hospital may do so. We conclude that it may not.

### I.

Because this case comes before us after the grant of a motion for judgment on the pleadings, we "accept[] as true all material facts alleged" in the complaint. (*Smiley v. Citibank (South Dakota) N.A.* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) The following facts appear from the allegations of the complaint.

Plaintiff Joel K. Parnell was injured in an automobile accident while a passenger in a taxicab. At the time of the accident, Parnell had medical insurance through the Wholesale Beer Distributor Industry Trust Health Plan (the Health Plan). The Health Plan had contracted with Community Care Network (CCN), a preferred provider organization, to provide discounts on medical care to its beneficiaries (CCN agreement). Under the terms of the CCN agreement, the Health Plan agreed to reimburse preferred providers in the CCN network for services rendered to its beneficiaries, which included deductibles and copayments owed by the beneficiaries themselves, in the amount specified in CCN's provider agreements. In turn, CCN agreed to

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

accept those amounts as "payment in full for Health Care Services or Benefits provided to Beneficiaries by CCN providers."[2]

Parnell received treatment for his injuries from defendant San Joaquin Community Hospital, which was owned and operated by defendant Adventist Health System/West (collectively, the Community Hospital). The Community Hospital was a preferred provider in CCN's network and had entered into a provider agreement with CCN (provider agreement). Under the provider agreement, the Community Hospital authorized CCN "to act in its behalf in contracting for the provision of" medical services. The Community Hospital further agreed to provide medical services to the beneficiaries of any contracts entered into by CCN on its behalf and to accept "as payment in full" the amount set forth in the agreement which included any deductibles and copayments owed by the beneficiaries themselves.[3]

As required by the provider agreement, the Community Hospital presented a claim for payment for services provided to Parnell to the Health Plan. In accordance with the CCN and provider agreements, the Health Plan reimbursed the hospital in the amount specified in the provider agreement. Parnell also paid the hospital his required share of the deductibles and copayments. Consistent with the "payment in full" clause in the provider agreement, each bill received by Parnell from the Community Hospital noted that Parnell had received a "CCN discount" which "will be 'written off' by" the hospital.

Parnell later asserted a tort claim against the driver of the vehicle that struck the taxicab. Soon thereafter, the Community Hospital filed a notice of lien "against any final judgment, compromise, or settlement agreement made between" Parnell and the driver pursuant to section 3045.1 in the amount of $14,450.40. The lien sought to recover the difference between the "actual" cost of the medical services and the negotiated amount received by the Community Hospital under the provider agreement.

---

[2] The relevant clause in the contract states: "Payor agrees to reimburse, or directs its Claims Administrator to reimburse, the preferred providers according to the Reimbursement specified in CCN's Provider Agreements. Those Reimbursement Amounts include deductible and copayment amounts and shall constitute payment in full for Health Care Services or Benefits provided to Beneficiaries by CCN providers."

[3] The relevant clause in the provider agreement states: "(a) Contract Hospital hereby agrees to provide Inpatient and Outpatient Services to Beneficiaries, at the Reimbursement Amounts determined and established by CCN through Payor Agreements with Payors, which Payor Agreements are incorporated herein by reference. Such Reimbursement Amounts are set forth on Appendix A attached hereto and incorporated herein. Contract Hospital agrees to accept the payment specified in Paragraph 4.1 as payment in full for all Inpatient and Outpatient Services rendered to Beneficiaries. If Contract Hospital renders a service to a Beneficiary which does not appear in Paragraph 2.11 or 2.12, such as in emergency, Contract Hospital agrees to accept as payment in full the rate as provided in Paragraph 4.1 of this Contract. Payors will pay the Contract Hospital for such services rendered in accordance with the terms and under the express conditions of this Contract."

In response, Parnell filed the instant action against the Community Hospital, alleging unfair business practices (Bus. & Prof. Code, § 17200 et seq.), violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.), trespass to chattels, breach of third party contract, and negligence.[4] After answering the complaint, the Community Hospital filed a motion for judgment on the pleadings. Following a hearing, the trial court granted the motion and held that "[t]he Hospital's lien rights provided by Civil Code Section 3045.1 to assert a lien against a patient's recovery from a third party tortfeasor to the extent of reasonable and necessary charges of the hospital, whether by way of judgment, settlement or compromise is not constrained by the Hospital's negotiated discount with a health insurance carrier."[5]

The Court of Appeal reversed. According to the court, "based on the purposes of the act as disclosed in the available legislative history, the [HLA] did not, and was not intended to, rewrite California law of accord and satisfaction in such a manner as to permit the hospital to assert a lien in the foregoing circumstances." The court therefore disagreed with *Swanson v. St. John's Regional Medical Center* (2002) 97 Cal.App.4th 245 [118 Cal.Rptr.2d 325] (*Swanson*) and concluded that "a hospital that has received full payment for services under the terms of its contract with a medical insurance provider is not entitled to file a lien to recover the difference between that payment and the hospital's 'usual and customary' charges for similar services." The court, however, declined to address the applicability of the litigation privilege or "to sort out the causes of action and types of relief to which appellant may be entitled." Instead, it merely held "that . . . based on the pleadings before the trial court, [Parnell] has stated a cause of action for declaratory relief under the Unfair Practices Act (Bus. & Prof. Code, § 17200) and the judgment against him, dismissing this action, was erroneous."

We granted review.

## II.

We begin by determining whether a lien asserted under the HLA requires the existence of an underlying debt owed by the patient to the hospital. Parnell contends the lien does and, absent such a debt, the hospital may not assert the lien. Citing *Swanson*, *supra*, 97 Cal.App.4th 245, the hospital counters that the lien is statutory and does not require an underlying debt

---

[4] Parnell originally filed the lawsuit as a class action. He later sought and received dismissal of the class action claims without prejudice.

[5] The trial court originally took the motion under submission and then conducted a court trial limited to liability and equitable issues. At the end of the trial, the court took the matter under submission. The statement of decision only resolved the motion for judgment on the pleadings, and the court entered judgment in conformance with that ruling.

because it only "seeks recourse against the third party tortfeasor that caused the patient's injuries." (*Id.* at p. 250.) As explained below, we agree with Parnell.

 Under the HLA, any hospital "which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or wrongful act . . . shall, if the person has a claim against another for damages on account of his or her injuries, have a lien upon the damages recovered, or to be recovered, by the person . . . to the extent of the amount of the reasonable and necessary charges of the hospital and any hospital affiliated health facility . . . ." (§ 3045.1.)[6] "The lien shall apply whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise." (§ 3045.2.) The hospital's recovery on the lien is, however, limited "to an amount which could be satisfied from 50 percent of the" amount recovered by the injured person from the tortfeasor. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 6 [1 Cal.Rptr.3d 90]; see also § 3045.4.)

 To assert the lien, the hospital need not provide notice of the lien to the injured person. But the lien "shall not be effective . . . unless a written notice . . . is . . . mailed . . . to each" alleged tortfeasor "known to the hospital . . . ." (§ 3045.3.)[7] If the tortfeasor pays the injured person "after the receipt of the notice as provided by Section 3045.3, without paying to the" hospital "the amount of its lien claimed in the notice, or so much thereof

---

[6] Section 3045.1 states: "Every person, partnership, association, corporation, public entity, or other institution or body maintaining a hospital licensed under the laws of this state which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act not covered by Division 4 (commencing with Section 3201) or Division 4.5 (commencing with Section 6100) of the Labor Code, shall, if the person has a claim against another for damages on account of his or her injuries, have a lien upon the damages recovered, or to be recovered, by the person, or by his or her heirs or personal representative in case of his or her death to the extent of the amount of the reasonable and necessary charges of the hospital and any hospital affiliated health facility, as defined in Section 1250 of the Health and Safety Code, in which services are provided for the treatment, care, and maintenance of the person in the hospital or health facility affiliated with the hospital resulting from that accident or negligent or other wrongful act."

[7] Section 3045.3 states: "A lien shall not be effective, however, unless a written notice containing the name and address of the injured person, the date of the accident, the name and location of the hospital, the amount claimed as reasonable and necessary charges, and the name of each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries received, is delivered or is mailed by registered mail, return receipt requested, postage prepaid, to each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries sustained prior to the payment of any moneys to the injured person, his attorney, or legal representative as compensation for the injuries.

"The hospital shall, also, deliver or mail by registered mail, return receipt requested, postage prepaid, a copy of the notice to any insurance carrier known to the hospital which has insured the person, firm, or corporation alleged to be liable to the injured person against the liability.

as can be satisfied out of 50 percent of the moneys due under any final judgment, compromise, or settlement agreement," then the tortfeasor "shall be liable to the" hospital "for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for medical care and services rendered to the injured person." (§ 3045.4.)[8]

■ By its terms, the HLA creates a "statutory nonpossessory lien." (*Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 217 [61 Cal.Rptr.2d 638, 932 P.2d 210] (*Mercy Hospital*).) The lien is "nonconsensual" and "compensates a hospital for providing medical services to an injured person by giving the hospital a direct right to a certain percentage of specific property, i.e., a judgment, compromise, or settlement, otherwise accruing to that person." (*Ibid.*)

■ Because a lien under the HLA is statutory, "[t]he Legislature is . . . free to define and limit such a lien . . . ." (*Mercy Hospital, supra*, 15 Cal.4th at pp. 222–223.) As such, to determine whether such a lien requires an underlying debt owed by the patient to the hospital, we first look to the statutory language for guidance. (See *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727] (*Wilcox*) ["The words of the statute are the starting point"].) Unfortunately, this language is less than clear.

■ On the one hand, the HLA expressly creates a "lien." (§ 3045.1.) As a general rule, "[a] lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." (§ 2872.) Because "[a] security interest cannot exist without an underlying obligation" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 [44 Cal.Rptr.2d 352, 900 P.2d 601]), a lien is typically "but an incident of the debt secured" (*Lewis v. Booth* (1935) 3 Cal.2d 345, 349 [44 P.2d 560]) and "presupposes the existence of a debt" (*Dorr v. Sacred Heart Hosp.* (1999) 228 Wis.2d 425 [597 N.W.2d 462, 470] (*Dorr*)). By using the term "lien," the Legislature arguably intended to give a lien under

The person, firm, or corporation alleged to be liable to the injured person shall, upon request of the hospital, disclose to the hospital the name of the insurance carrier which has insured it against the liability."

[8] Section 3045.4 states in full: "Any person, firm, or corporation, including, but not limited to, an insurance carrier, making any payment to the injured person, or to his or her attorney, heirs, or legal representative, for the injuries he or she sustained, after the receipt of the notice as provided by Section 3045.3, without paying to the association, corporation, public entity, or other institution or body maintaining the hospital the amount of its lien claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys due under any final judgment, compromise, or settlement agreement after paying any prior liens shall be liable to the person, partnership, association, corporation, public entity, or other institution or body maintaining the hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person."

the HLA the same characteristics as a typical lien. Under this construction, a lien under the HLA may not attach absent an underlying debt. (See *id.* at pp. 469–470.)

Other language in the HLA supports such a construction and suggests that a lien under the HLA requires an underlying debt owed by the patient to the hospital. For example, the HLA does not give a hospital an independent cause of action against the third party tortfeasor. Instead, it gives the hospital a lien on any "damages recovered" by the patient from a third party tortfeasor in the amount of its "reasonable and necessary *charges*" for medical services provided to that patient for injuries caused by the tortfeasor. (§ 3045.1, italics added.) Because the lien seeks to compensate the hospital for services provided to the patient, the statutory term "charges" presumably refers to "the charges made *to the patient* or [his or] her health insurer." (*Grauberger v. St. Francis Hosp.* (N.D.Cal. 2001) 149 F.Supp.2d 1186, 1191, italics added, vacated on other grounds, 169 F.Supp.2d 1172.) Under this construction, "[t]he debt owed by [the patient] to the [h]ospital is the foundation for the [h]ospital's lien right." (*Ibid.*) The language of section 3045.4—which limits the hospital to recovery of the "amount" it "was entitled to receive as payment for the medical care and services rendered to the" patient if the tortfeasor fails to pay the lien before paying the patient—also supports such a construction. (See *Nishihama v. City & County of San Francisco* (2001) 93 Cal.App.4th 298, 308 [112 Cal.Rptr.2d 861] ["The amount that a hospital is entitled to receive as payment necessarily turns on any agreement it has with the injured person or the injured person's insurer"].)

On the other hand, the HLA does not distinguish between insured and uninsured patients. Moreover, several of its provisions are directed at the third party tortfeasor, not at the patient. For example, the HLA requires the hospital to provide written notice of the lien to the tortfeasor, but not to the patient. (See § 3045.3.) If the tortfeasor fails to satisfy the lien before paying the patient, the HLA makes the tortfeasor—but not the patient—liable for the lien amount. (See § 3045.4.) And the HLA exempts certain tortfeasors—but not patients—from its provisions. (See § 3045.6.) By focusing on the tortfeasor—and not on the patient—the HLA arguably does not make the patient's debt to the hospital the basis for the hospital's lien right. (See *Swanson, supra,* 97 Cal.App.4th at p. 249.)

■ Because the statutory language is ambiguous, we look to the legislative history for guidance. (See *Wilcox, supra,* 21 Cal.4th at p. 977.) This history strongly suggests that a lien under the HLA requires an underlying debt owed by the patient to the hospital. The HLA was originally enacted in 1961 to allow hospitals to recoup losses suffered when a patient "failed to discharge *any* portion of the hospital bill" even though that patient had

"collected upon a cause of action against another." (Pope, Enrolled Bill Rep. Mem. for Governor Edmund Brown on Sen. Bill No. 1140 (1961 Reg. Sess.) July 17, 1961, p. 1, italics added.) The Legislature was therefore concerned with uninsured patients who failed to pay *any part of their* debt to the hospital and enacted the HLA to give hospitals the ability to collect on this debt. As such, the Legislature presumably intended that the debt owed by the patient to the hospital be the underlying basis for any lien asserted under the HLA.

The subsequent revisions to the HLA in 1992 do not compel a different conclusion. In response to the difficulties encountered by hospitals in "keeping their emergency rooms open," the Legislature expanded the HLA to permit hospitals to recover compensation for more than just the first 72 hours of emergency care. (Assem. Com. on Judiciary, conc. in Sen. Amends. to Assem. Bill No. 2733 (1991–1992 Reg. Sess.) as amended June 25, 1992, p. 2.) Under the revised (and current) version, the hospital could now recover for all "treatment, care, and maintenance of the [patient] . . . resulting from [the] accident or negligent or other wrongful act." (§ 3045.1.) In making these revisions, however, the Legislature was again concerned with "accident victims" who are "uninsured" and who do not pay their debt to the hospital. (Assem. Com. on Judiciary, conc. in Sen. Amends. to Assem. Bill No. 2733 (1991–1992 Reg. Sess.) as amended June 25, 1992, p. 2.) Thus, by expanding the HLA, the Legislature merely sought to enhance the ability of hospitals to collect on this debt. It did not intend to alter the underlying basis for the lien—i.e., the debt owed by the patient to the hospital for its medical services.

■ Contrary to the assertion of the Community Hospital, the legislative history behind section 3040—which addresses liens "asserted by a licensee of the Department of Managed Care or the Department of Insurance" or by "a medical group or an independent practice association"—is inapposite. (§ 3040, subd. (a).) As an initial matter, we note that, although relevant, "a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act . . . ." (*Eu v. Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289].) In any event, we do not believe that the legislative history of section 3040 is helpful here.

Enacted in 2000 (Stats. 2000, ch. 848, § 1), section 3040, among other things, limits the amount that certain medical care providers, such as health maintenance organizations, may collect on a lien "for the recovery of money paid or payable to or on behalf of an enrollee or insured for health care services provided under a health care service plan contract or a disability insurance policy." (§ 3040, subd. (a).) For medical services "not provided on a capitated basis," these providers may only recover "the amount actually

paid" for the services. (§ 3040, subd. (a)(1).) For medical services "provided on a capitated basis," these providers may only recover "the amount equal to 80 percent of the usual and customary charge for the same services by medical providers that provide health care services on a noncapitated basis in the geographic region in which the services were rendered." (§ 3040, subd. (a)(2).) Although section 3040 expressly exempts hospitals that assert a lien under the HLA from its provisions (§ 3040, subd. (g)(3)), nothing in its language or history suggests the Legislature intended to alter the HLA in any way. To the contrary, the legislative history indicates the Legislature did not intend for section 3040 "to limit hospital liens now available under" the HLA. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1471 (1999–2000 Reg. Sess.) as amended Apr. 27, 2000, p. 4.)

The Community Hospital correctly notes that, in exempting liens asserted under the HLA from the scope of section 3040, the Legislature was aware of *Satsky v. United States* (S.D.Tex. 1998) 993 F.Supp. 1027 (*Satsky*)—which held that a hospital may not assert a lien under Texas law if the patient's debt to the hospital has been satisfied. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1471 (1999–2000 Reg. Sess.) as amended Apr. 27, 2000, p. 4.) But the discussion of *Satsky* in the legislative history is hardly as conclusive as the Community Hospital suggests. On the one hand, the committee reports do suggest that California law is different from *Satsky*. (See, e.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1471 (1999–2000 Reg. Sess.) as amended Apr. 27, 2000, p. 4 [suggesting that, unlike in Texas, "California hospitals have an independent right to assert a lien under" the HLA].) On the other hand, the same reports state that the law surrounding such liens is still evolving and, in doing so, imply that California courts could still follow *Satsky*. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1471 (1999–2000 Reg. Sess.) as amended Apr. 27, 2000, p. 4 [observing that *Satsky* "merely illustrates how the area of health care liens is evolving, as more and more consumers become aware of and challenge billing practices of health care service plans"].) Given the equivocal nature of the legislative history of section 3040, we decline to rely on it.

Indeed, our construction of another lien statute analogous to the HLA prior to the enactment of section 3040 confirms that a lien under the HLA requires the existence of an underlying debt owed by the patient to the hospital. In *City & Co. of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 108 [48 Cal.Rptr.2d 42, 906 P.2d 1196] (*Sweet*), we determined the applicability of the common fund doctrine[9] to a lien asserted under Government Code section 23004.1, which "gives a county a first lien for the cost of medical care it has

---

[9] "The common fund doctrine recognizes the common law 'historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from

provided to an injured person against any judgment that person recovers from a third person who is responsible for the injury." (*Sweet*, at p. 108.) Specifically, we considered "whether that lien is subject to equitable reduction for a portion of the attorney fees incurred by the injured party in recovering damages from the person responsible for the injury" (*ibid.*), and concluded that it is not (*id.* at p. 118).

The basis for this conclusion was our finding that the lien claimant, the City and County of San Francisco (County), and the patient had a creditor-debtor relationship. (See *Sweet, supra,* 12 Cal.4th at p. 117.) Thus, by asserting the lien, the County merely sought to recover on the debt owed by the patient for medical services provided by the County. (See *id.* at p. 118.) Because the County, as the patient's creditor, did "not have an interest in the recovery in common with the" patient (*id.* at p. 117), we concluded that the common fund doctrine did not apply and that "the amount of the lien may not be reduced or diminished by apportioning attorney fees . . . ." (*Id.* at p. 118.)

In further support, we noted that our reasoning accorded with the reasoning of most of "the courts of our sister states that have considered the question" (*Sweet, supra,* 12 Cal.4th at p. 118)—including the Montana Supreme Court's decision in *Sisters of Charity of Providence of Mont. v. Nichols* (1971) 157 Mont. 106 [483 P.2d 279]. (*Sweet*, at p. 118.) Specifically, we cited with approval the Montana Supreme Court's conclusion that a statutory lien asserted by a hospital against its patient's recovery from a third party tortfeasor "was based on *a debt owed to the hospital*" by the patient. (*Ibid.*, italics added.)

Although *Sweet* addressed Government Code section 23004.1, we find its reasoning equally applicable here. Like Government Code section 23004.1,[10]

---

the fund or property itself or directly from other parties enjoying the benefit.' " (*Sweet, supra,* 12 Cal.4th at p. 110.)

[10] Government Code section 23004.1 states: "(a) Subject to the provisions of Section 23004.3, in any case in which the county is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment, including prostheses and medical appliances, to a person who is injured or suffers a disease, under circumstances creating a tort liability upon some third person to pay damages therefor, the county shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished, or shall, as to this right, be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished.

"(b) The county may, to enforce such rights, institute and prosecute legal proceedings against the third person who is liable for the injury or disease in the appropriate court, either in its own name or in the name of the injured person, his guardian, personal representative, estate, or survivors. Such action shall be commenced within the period prescribed in Section 340 of the Code of Civil Procedure. In the event that the injured person, his guardian, personal representative, estate, survivors, or either of them brings an action for damages against the

the HLA gives a hospital the right to assert a lien against any judgment recovered by a patient from a third party tortfeasor for the reasonable value of the medical services furnished to that patient. (See Civ. Code, §§ 3045.1, 3045.2.) And, like Government Code section 23004.1 (see *Sweet, supra,* 12 Cal.4th at p. 120 [holding that a county hospital may still recover directly from the patient notwithstanding Gov. Code, § 23004.1]), the HLA is "not exclusive, and the hospital may still proceed directly against the patient for any unpaid balance" (*Mercy Hospital, supra,* 15 Cal.4th at p. 217). For purposes of determining whether a lien under the HLA requires an underlying debt, we therefore see no material difference between Government Code section 23004.1 and the HLA.

Indeed, *Sweet* recognized the similarities between the two statutory schemes and relied in part on these similarities in concluding that a lien under Government Code section 23004.1 is not subject to equitable apportionment. (See *Sweet, supra,* 12 Cal.4th at p. 122, fn. 11 [noting that the HLA, like Gov. Code, § 23004.1, does not expressly preclude the applicability of the common fund doctrine].) A recent Court of Appeal decision has also recognized these similarities and, consistent with *Sweet,* held that the common fund doctrine does not apply to a lien asserted under the HLA. (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252 [119 Cal.Rptr.2d 606] (*Day*).) In doing so, the Court of Appeal concluded that the two statutory lien schemes "should be similarly construed and applied." (*Id.* at p. 253.) We agree and conclude that a lien under the HLA, like a lien under Government Code section 23004.1, is premised on a creditor-debtor relationship between the hospital and the patient. (*Sweet,* at p. 117; *Day,* at p. 252.) In other words, a lien under the HLA is based on a debt owed by the patient to the hospital. (See *Sweet,* at pp. 117–118; *Day,* at pp. 252–253.)

The Community Hospital's contention that any recovery on a lien under the HLA comes from the tortfeasor—and not from the patient—does not alter our conclusion. As explained above, a lien under the HLA is simply a legal claim upon the property of another in satisfaction of a debt owed by a patient

third person who is liable for the injury or disease, the county's right of action shall abate during the pendency of such action, and continue as a first lien against any judgment recovered by the injured or diseased person, his guardian, personal representative, estate, or survivors, against the third person who is liable for the injury or disease, to the extent of the reasonable value of the care and treatment so furnished or to be furnished. When the third person who is liable is insured, the county shall notify the third person's insurer, when known to the county, in writing of the lien within 30 days following the filing of the action by the injured or diseased person, his guardian, personal representative, estate, or survivors, against the third person who is liable for the injury or disease; provided, however, that failure to so notify the insurer shall not prejudice the claim or cause of action of the injured or diseased person, his guardian, personal representative, estate, or survivors, or the county."

for medical services provided by the lien claimant. Thus, absent an underlying debt, the hospital may not recover on the lien even assuming that the recovery comes from the tortfeasor.

Indeed, a comparison of Government Code section 23004.1 and the HLA makes this clear. Under Government Code section 23004.1, subdivision (a), the county is "subrogated to any right or claim that the injured or diseased person . . . has against" the third party tortfeasor "to the extent of the reasonable value of the care and treatment" furnished. The county may file its own action against the tortfeasor.[11] (See Gov. Code, § 23004.1, subd. (b).) By contrast, the HLA only gives a hospital the right to file its own action against the tortfeasor if that tortfeasor fails to pay the lien before paying the patient. (See Civ. Code, § 3045.4.) Thus, recovery on a lien under Government Code section 23004.1 is more likely to constitute recovery from the tortfeasor—and not from the patient—than recovery on a lien under the HLA. Nonetheless, we held that a lien under Government Code section 23004.1 requires the existence of an underlying debt owed by the patient to the county. (See *Sweet, supra,* 12 Cal.4th at p. 118.) As such, we can hardly reach a contrary conclusion as to a lien asserted under the HLA.

We therefore find inapposite the other statutory liens cited by the Community Hospital. (See, e.g., Lab. Code, §§ 3856, subd. (b) [employer's lien for worker's compensation benefits], 3865 [Employment Development Department lien for compensation to the employee for lost earnings], 4417 [Asbestos Workers' Account lien]; Health & Saf. Code, § 121270, subd. (m) [AIDS Vaccine Victims Compensation Fund lien].) These statutes, unlike Government Code section 23004.1 and the HLA (see *ante,* at pp. 605–608), do not reference an independent debt owed by the beneficiary—i.e., an employee or vaccine victim—to the lien claimant.[12] In any event, the unique nature of hospital liens makes any comparison to these other statutory liens dubious at best.

---

[11] If the patient files his or her own action against the tortfeasor, the county hospital's right of action abates and continues as "a first lien against any judgment recovered by the" patient. (Gov. Code, § 23004.1, subd. (b).)

[12] In particular, we do not find persuasive the hospital's analogy of a lien under the HLA to a worker's compensation lien. Unlike the hospital liens (see *Sweet, supra,* 12 Cal.4th at pp. 117–118; *Day, supra,* 98 Cal.App.4th at p. 253), a worker's compensation lien requires equitable apportionment of any attorney fees incurred (Lab. Code, § 3856, subd. (b); see also *Quinn v. State of California* (1975) 15 Cal.3d 162, 170 [124 Cal.Rptr. 1, 539 P.2d 761] [holding that Lab. Code, § 3856, subd. (b) "requires" "the application of the equitable principle of reasonable apportionment"]). Moreover, the employer's recovery on a worker's compensation lien depends "entirely upon the worker's *success* in his third party suit." (*Quinn,* at p. 168, fn. 10.) By contrast, a hospital may still pursue an action directly against the patient for the amount owed for its services notwithstanding its lien. (See *Sweet,* at p. 120; *Mercy Hospital, supra,* 15 Cal.4th at p. 217.)

■ In reaching this conclusion, we agree with the vast majority of courts from our sister states that have construed hospital lien statutes analogous to the HLA.[13] We therefore disapprove of *Swanson v. St. John's Regional Medical Center, supra,* 97 Cal.App.4th 245, to the extent it conflicts with our decision today and hold that a lien under the HLA requires the existence of an underlying debt owed by the patient to the hospital and that, absent such a debt, no lien may attach.

### III.

■ We now apply our holding to this case. For the medical services provided to Parnell, the Community Hospital received payment from Parnell and the Health Plan in the amount specified in the hospital's provider agreement. Under the CCN and provider agreements, the Community Hospital agreed to accept this amount as "payment in full." As conceded by the Community Hospital, Parnell's entire debt to the hospital has therefore been extinguished. Indeed, the bill sent by the Community Hospital to Parnell noted the hospital's usual and customary charges and stated that the difference between these charges and the amount owed under the insurance contract "is the CCN discount received for using a CCN facility" and will be "written off" by the hospital. Because Parnell no longer owes a debt to the hospital for its services, we conclude that the hospital may not assert a lien under the HLA against Parnell's recovery from the third party tortfeasor.

In reaching this conclusion, we follow the lead of most of our sister courts that have addressed the same question under hospital lien statutes analogous

---

[13] (See, e.g., *Satsky, supra,* 993 F.Supp. at p. 1029 [holding that the hospital lien depends " 'upon the existence' " of a debt]; *Trevino v. HHL Financial Servs., Inc.* (Colo. 1997) 945 P.2d 1345, 1350 ["The Legislature clearly intended to offer hospitals additional protection for medical services debts by enacting the hospital lien statute"]; *Maxwell v. South Miami Hospital Foundation, Inc.* (Fla.Dist.Ct.App. 1980) 385 So.2d 127, 127 (*Maxwell*) [holding that extinguishment of the underlying debt extinguished the hospital's statutory lien]; *Kenneth F. White, Chtd. v. St. Alphonsus Reg. Medical Center* (2001) 136 Idaho 238 [31 P.3d 926, 931] ["[a] hospital . . . is a creditor who possesses a lien on the tort recovery to secure payment of its charges for services provided to the injured party"]; *Lopez v. Morley* (2004) 352 Ill.App.3d 1174 [817 N.E.2d 592, 599, 288 Ill.Dec. 234] [the hospital's "lien covers only the amounts of the debt owed"]; *Cullimore v. St. Anthony Medical Center, Inc.* (Ind.Ct.App. 1999) 718 N.E.2d 1221, 1225 ["In the case of a hospital lien, the lien secures the underlying debt for medical treatment and care"]; *Wright v. First Nat'l Bank in Albuquerque* (1997) 1997 NMSC 26, 123 N.M. 417 [941 P.2d 498, 501] (*Wright*) [holding that a hospital may not assert a statutory lien in an amount exceeding the amount it agreed to accept from the patient's insurer]; *Maber, Inc. v. Factor Cab Corp.* (1963) 19 A.D.2d 500 [244 N.Y.S.2d 768, 772] [holding that satisfaction of a hospital's lien "is ultimately that of the original or underlying debts incurred by the injured person"]; *Dorr, supra,* 597 N.W.2d at p. 470 [holding that the hospital lien statute "requires an underlying debt to support the lien"]; but see *Rogalla v. Christie Clinic, P.C.* (2003) 341 Ill.App.3d 410 [794 N.E.2d 384, 392, 276 Ill.Dec. 489] (*Rogalla*) [holding that the hospital's statutory lien was not based on the patient's debt to the hospital].)

to the HLA.[14] To the extent our sister courts have reached a contrary conclusion, most of those cases are distinguishable.

For example, in *Alaska Native Tribal Health Consort. v. E.R.* (Alaska 2004) 84 P.3d 418 (*Alaska Native Tribal Health Consortium*), the Alaska Supreme Court held that a hospital may assert a lien against a native Alaskan even though federal law provides that patient with free health care. (*Id.* at p. 421.) In reaching this conclusion, the court relied on the fact that "federal law makes clear that [the native] does not personally have to owe [the hospital] anything for a debt to arise from his receipt of free medical services . . . ." (*Id.* at p. 425.) By contrast, there is no analogous federal law implicated in this case. In any event, *Alaska Native Tribal Health Consortium* does not appear to be applicable to California's hospital lien statutes because recovery under Alaska's hospital lien statute is subject to equitable apportionment under the common fund doctrine. (*Id.* at pp. 421, 434.) As noted earlier (see *ante*, at pp. 577–579), we have refused to apply the common fund doctrine to California's hospital liens (see *Sweet, supra,* 12 Cal.4th at p. 118; *Day, supra,* 98 Cal.App.4th at p. 253.)

Likewise, *Andrews v. Samaritan Health System* (2001) 201 Ariz. 379 [36 P.3d 57, 61] (*Andrews*), disapproved on other grounds in *Blankenbaker v. Jonovich* (2003) 205 Ariz. 383 [71 P.3d 910], is inapposite. In *Andrews*, the Arizona Court of Appeal concluded that a hospital could assert a lien to recover the difference between the contract payments and its customary charges. But, unlike the Community Hospital's provider agreement, most of the provider agreements at issue in *Andrews* expressly reserved the hospital's "right to recapture" this difference. (*Id.* at p. 61.) Although *Andrews* did extend its holding to a provider agreement analogous to the Community Hospital's agreement, it did so based on the language of Arizona's hospital lien statute which, unlike the HLA, states that a hospital " '*is entitled to* a lien for the customary charges for care and treatment . . . of an injured person' without specifying further action by the hospitals." (*Ibid.,* italics added.)

---

[14] (See *Satsky, supra,* 993 F.Supp. at p. 1027 ["As there is no debt, there can be no lien"]; *Maxwell, supra,* 385 So.2d at p. 127 [holding that settlement of the debt underlying the hospital's lien extinguished the lien]; *Lopez v. Morley, supra,* 817 N.E.2d at p. 599 [holding that a hospital's lien "covers only the amounts of the debt owed"]); *Midwest Neurosurgery, P.C. v. State Farm Ins. Cos.* (2004) 268 Neb. 642 [686 N.W.2d 572, 581] [limiting the hospital's lien to the amount the hospital agreed to accept as payment in full from the patient and his insurer]; *Wright, supra,* 941 P.2d at pp. 500–501 [holding that the hospital could not assert a lien for its full charges because it had agreed to accept the insurance payment as payment in full]; *Dorr, supra,* 597 N.W.2d at p. 473 [holding that "the hospital is precluded from making any claim for payment" using the lien statute because its provider agreement "negates the existence of a debt owed by the" patient "to the hospital"].)

Only *Rogalla, supra,* 794 N.E.2d at page 392, squarely supports the hospital's interpretation of the HLA. In that case the court held that a hospital lien seeks to recover the tortfeasor's debt to the hospital, and not the patient's debt. (But see *Lopez v. Morley, supra,* 817 N.E.2d at p. 599 [holding that the lien "covers only the amounts of the debt owed"].) *Rogalla,* of course, is not binding on us. Based on the applicable legislative history and our decision in *Sweet,* we decline to follow it.

In doing so, we recognize that California hospitals face mounting financial pressures, and that many, if not all, of these hospitals may "face a genuine financial crisis that threatens their ability to continue to serve their communities." (Cal. Healthcare Assn., Special Rep., California Hospitals' Financial Condition: On Life Support (June 2004) p. 1.) We also recognize that our ruling today may result in a significant hardship for many of these hospitals. Indeed, we have no doubt that, as claimed by the Community Hospital and various amici curiae, "hospitals negotiate and enter into discounted rate agreements with the expectation that they will be entitled to recover additional funds from other payors who have an obligation to pay for the hospital's services." Although we have no wish to exacerbate the financial crisis faced by California hospitals, our job is to construe our statutes in accordance with the Legislature's intent and the controlling case law. As such, hospitals may look to the Legislature for relief from these financial pressures, but not to this court.

In any event, we believe that the solution lies in the hands of the hospitals. By precluding the Community Hospital from asserting a lien under the HLA in this case, we "simply give[] effect to" its contracts. (*Lopez v. Morley, supra,* 817 N.E.2d at p. 599.) If hospitals wish to preserve their right to recover the difference between usual and customary charges and the negotiated rate through a lien under the HLA, they are free to contract for this right. Our decision today does not preclude hospitals from doing so.[15] (See, e.g., *Andrews, supra,* 36 P.3d at p. 61.) Accordingly, we conclude that the Community Hospital may not assert a lien under the HLA against Parnell's recovery from the third party tortfeasor.[16]

---

[15] Contrary to Parnell's assertion, neither Insurance Code section 10133.2 nor Health and Safety Code section 1373.18 precludes hospitals from contractually preserving their right to recover "reasonable and necessary charges" pursuant to a lien under the HLA. (Civ. Code, § 3045.1.) Both statutes limit only the "copayment amounts" recoverable by a health care provider pursuant to contract. (Ins. Code, § 10133.2; Health & Saf. Code, § 1373.18.) Because recovery pursuant to a lien under the HLA is contingent on the patient's recovery of damages from a third party tortfeasor, it is not a patient copayment. Indeed, nothing in either Insurance Code section 10133.2 or Health and Safety Code section 1373.18 purports to limit recovery under the HLA.

[16] Because our holding relies solely on the absence of a debt underlying the lien, we do not reach, and express no opinion on, the following issues: (1) whether *Olszewski v. Scripps Health*

## IV.

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

(2003) 30 Cal.4th 798 [135 Cal.Rptr.2d 1, 69 P.3d 927] and *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635 [246 Cal.Rptr. 192] apply outside the Medicaid context and limit a patient's tort recovery for medical expenses to the amount actually paid by the patient notwithstanding the collateral source rule; (2) whether the HLA violates due process; and (3) whether hospitals may waive their rights under the HLA.

Like the Court of Appeal, we also decline to address "the issue of litigation immunity for filing notices of liens" and leave the sorting out of "the causes of action and types of relief to which [Parnell] may be entitled" to the proceedings on remand.