There is one question involved in this appeal:
Was an unmarried daughter, who was living in an apartment separate from her parents, a "resident of the household" of her father, and, therefore, an "insured" under two automobile liability policies?
Farm Bureau issued two policies of insurance (A130756 and A208619), to W.C.B. Cain, agreeing to insure two automobiles, a 1959 Chevrolet Bel-Air, and a 1963 Chevrolet pickup owned by W.C.B. Cain. Martha Faye Cain, the daughter of W.C.B. Cain, was living with her parents when the policies were issued, but was living in an apartment when the accident, which is the subject of this controversy, occurred. Martha Faye Cain was driving her personal 1967 Chevrolet, which also was insured by Farm Bureau, but the question of coverage under that policy is not the issue which is presented *Page 196 
here. Martha Faye made claims against Farm Bureau for medical payments and uninsured motorist coverage as an "insured" under the two policies of insurance on which her father, W.C.B. Cain, was the named insured. Martha Faye claimed that she was entitled to benefits under the two policies because she was injured when she was forced off the road by an unidentified motorist.
Farm Bureau denied coverage under the two policies on the ground that Martha Faye was not "a resident of the same household" and, therefore, was not an "insured," under the terms of the policies.
At the time of the accident, January 24, 1974, Martha Faye was an employee of Kleinert's. From the time she began work with Kleinert's in 1971, until October, 1973, she lived with her father and mother. In October, 1973, she moved to Bullard's Apartments in Elba. She testified, "I was 22 years old and wanted to move out . . and be on my own for awhile."
Initially, Martha Faye shared the apartment with Loretta Young, but Loretta married and moved out. At the time of the accident, Martha Faye was living alone. Before the accident, Martha Faye listed Bullard Apartments as her mailing address. She would visit her parents occasionally and spend the night. After moving into the apartment, she would call her parents and tell them where she was going if she was going out of state, but she did not believe she had to have their permission to go; she only wanted them to know where she was going.
The two policies of insurance issued to W.C.B. Cain pursuant to the uninsured motorist provision, provide as follows:
 INSURING AGREEMENT III UNINSURED MOTORIST Coverage M-Damages for Bodily Injury Caused by Uninsured Automobiles.
 The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages except punitive damages (other than for death) from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile provided for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration. . . .
Under Insuring Agreement III the following definition of insured reads:
 DEFINITIONS-INSURING AGREEMENT III . . . (a) Insured. The unqualified word "Insured" means (1) the First Named Insured as stated in the policy and while residents of the same household, the spouse of any such Named Insured and relative of either; . . .
Martha Faye claimed medical payments protection and coverage under the policies of W.C.B. Cain. Those policies provide:
COVERAGE C-MEDICAL PAYMENTS.
 To pay the reasonable expense of necessary medical, dental, x-ray, eyeglasses, hearing aids, surgical, ambulance, hospital, professional nursing, funeral services and prosthetic devices, all incurred within one year from date of accident to or for:
 (Division 1) each person who sustains bodily injury, sickness or a disease caused by accident while occupying:
 (a) the automobile described in the declaration, if the injury arises out of the use thereof by the named insured or spouse if a resident of the same household, or with the express permission of either.
 (Division 2) each insured who sustains bodily injury, sickness or disease caused by accident, while in or upon, or while entering into or alighting from, or through being struck by, an automobile. The word "automobile" as used in this paragraph means a four wheeled land motor vehicle, or a trailer, not operated on rails or crawler treads, but does not mean: . . . *Page 197 
Each policy, as it applies to coverage C, Medical Payments, defines "owned automobile" as follows:
 "owned automobile" means the motor vehicle or trailer described in the declarations.
Regarding medical payments coverage protection, the policies have the following exclusions:
EXCLUSIONS-INSURING AGREEMENTS I AND II
This insurance does not apply under: . .
 (h) Coverages C, C-1, and C-2, to bodily injury to any person: . . .
 (2) while occupying or through being struck by any automobile, land motor vehicle or trailer if such vehicle is owned by the named insured or a relative and is not included in the definition of "automobile"; . . .
As already stated, Martha Faye, at the time of her accident was not operating either the 1959 Chevrolet Bel-Air or the 1963 Chevrolet pickup, the vehicles described on the declaration for policy A130756 and A208619, respectively.
After hearing testimony of three witnesses and considering Martha Faye's deposition, the trial court declared that Martha Faye was covered under both policies as an "insured." We reverse.
On review, we indulge all reasonable presumptions in favor of the findings made by the trial court, but after reviewing the facts of this case, we are convinced that the findings by the trial court are palpably wrong. Orton v. Gay, 285 Ala. 270,231 So.2d 305 (1970).
Furthermore, this appeal involves a mixed question of law and fact. In such cases, we need not find that the trial court's findings of fact are "plainly and palpably wrong"; we need only to say that we differ with the trial court, not on the facts, but on its application of the law to those facts. See Ex parteShoaf, 186 Ala. 394, 64 So. 615 (1914), which is quoted in Exparte Newbern, 286 Ala. 348, 239 So.2d 792 (1970).
This is not the first time Alabama appellate courts have been called upon to determine who is and who is not a "resident of the same household." In State Farm Mutual Automobile InsuranceCompany v. Hanna, 277 Ala. 32, 166 So. 872 (1964), this Court, construing a similar definition of an insured as is present here, found that the named insured, a college student, was not living in the same household with his father, a claimed insured. In Crossett v. St. Louis Fire and Marine InsuranceCompany, 289 Ala. 598, 269 So.2d 869 (1972), this Court, again construing the definition of an "insured," but this time, in a case involving a homeowner's policy, held that a college student, under the facts of that case, was an "insured."
Hanna and Crossett have been criticized as being inconsistent. See special concurring opinion by Justice Somerville in Crossett. Hanna and Crossett do reach contrary results, but the factual settings are different. In Hanna, the named insured's intention to remove himself from the household was clear, and in Crossett, under somewhat different facts, the intention of the claimed insured to remain a member of the named insured's household was sufficiently shown by the evidence.
The most recent case coming to our attention is that of GulfAmerican Fire and Casualty Company v. Azar, 364 So.2d 332
(Ala.Civ.App. 1978); cert. den. 364 So.2d 335 (Ala. 1978), wherein the Court of Civil Appeals, citing both Hanna andCrossett, held:
 We believe that appellees' and the circuit court's reliance on Hanna and Crossett was misplaced. While we have no quarrel with the general proposition stated in those cases, we are of the opinion that even a favorable construction of ambiguous terms for the insured requires a factual basis. Indeed, the necessity of providing facts in support of a party's contention that he is or is not a resident of the same household as the named insured is clearly indicated by the opinions of former Justice Harwood in Hanna and Justice Bloodworth in Crossett. See Nationwide Mutual Insurance Co. v. Herren, *Page 198 
Ala.Civ.App., 362 So.2d 253 (1978). In the present case there were simply no facts presented to the circuit court which would demonstrate that Ben McGiffert resided in the same household as his father, the named insured.
 When the automobile accident which resulted in this dispute occurred, Ben McGiffert was living with his mother, Mrs. Murchison. T.B. McGiffert, the named insured, resided at an entirely different location. And although Ben McGiffert visited his father at the father's home, Mrs. Murchison testified by deposition that the visits did not include overnight stays. Furthermore, custody of Ben McGiffert had been awarded to Mrs. Murchison under the provisions contained in the decree divorcing her and her husband, and, consequently, Ben was a legal resident of his mother's household. See Chapman v. Allstate Insurance Co., supra.
 As these facts indicate, neither Ben McGiffert's actual or legal residence was in his father's household. Thus, the circuit court improperly awarded a summary judgment in favor of appellees on the ground that Ben McGiffert was a member of his father's household.
Under the facts of this case, at the time of the accident, Martha Faye Cain was not living with her father. She was living in an apartment separate and apart from her parents. She was not an insured under the two policies of insurance owned by her father.
The judgment of the trial court holding otherwise is due to be reversed.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.