PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CIVIL APPEALS
This case involves a dispute as to whether a patient treated at the University of South Alabama Medical Center ("USAMC") is responsible for paying medical bills resulting from her treatment that her insurance provider will not cover. Because the record makes it clear that no agent of USAMC was ever informed that the patient did not desire to be treated at USAMC, and because the record affirmatively shows that the patient willingly accepted treatment at USAMC, we hold that she is responsible for paying her medical expenses not covered by her insurance, and we reverse the judgment of the Court of Civil Appeals. See University of South Alabama v. Grubb, [Ms. 2970073, May 15, 1998] ___ So.2d ___ (Ala.Civ.App. 1998).
Debbie L. Grubb was involved in an automobile accident on November 18, 1994, and suffered an injury to her arm. She remained conscious during the time that was required for rescue officials to extricate her from her car, using the "jaws of life." Grubb testified that this time was at least 45 minutes.
Grubb's parents arrived at the scene of the accident before she was taken to a hospital. Her father, John David Cobb, testified that he told the paramedics on the scene that he wanted his daughter taken to Mobile Infirmary for treatment of her injuries. Cobb testified that his reason for preferring Mobile Infirmary was that *Page 1051 
100% of the costs incurred for treatment there would be paid by Grubb's insurance carrier. Richard Blaine, the Cobb family's preacher, testified that he was present when Mr. Cobb asked the paramedics to take Gsubb to Mobile Infirmary. At some point after making his request to the paramedics, but before Grubb was taken away from the scene of the accident, Cobb and his wife left to pick up a sweater from their home before proceeding to Mobile Infirmary. Blaine remained at the scene of the accident for an additional period. During this additional period, the paramedics on the scene elected to call in a helicopter for the possible transportation of Grubb to a hospital by air. Blaine testified that he understood that if Grubb was transported by helicopter then she would then be taken to USAMC instead of Mobile Infirmary, and, he testified, he went to tell Grubb's parents of the paramedics' decision.
Grubb testified that she did not want to be taken from the scene by helicopter because she was afraid of flying. The record reflects the following testimony by Grubb during cross-examination:
 "Q: Now you have told the jury that you have reservations about flying and you expressed those reservations. Can you tell the jury who you expressed those reservations to at the scene of the accident? "A: To Ms. Donna, the lady that was taking care of me.
"Q: How did you express it? What did you say?
 "A: When she told me they were going to put me on the chopper I asked her not to, that I wanted to go in the ambulance because I was afraid of flying.
"Q: Did you tell anyone else?
"A: No, sir.
 "Q: You didn't tell the person on the helicopter when you got on the helicopter?
"A: No, sir."
The senior paramedic on the site, Travis Parden, was employed at the time by Newman's ambulance service. He testified that when he arrived at the scene the call had already been made to have the helicopter, operated by "SouthFlight" (apparently an entity affiliated with USAMC), brought to the scene. He testified that "there were fire-department and basic EMTs on the scene prior to my arrival, and they requested SouthFlight prior to me being there." Parden testified, however, that even though the SouthFlight helicopter had already been called, he had the final authority to determine how and to where Grubb should be transported. Because he perceived her injury to be serious, indicating that she might lose the injured arm, he elected to have Grubb taken to the hospital by air. Parden further testified that Mobile Infirmary has no helicopter landing pad and that it is standard procedure for SouthFlight helicopters to take patients to USAMC for treatment.
Grubb's parents and Mr. Blaine had left the scene before the helicopter arrived. Grubb's testimony shows that while she did object to being taken to the hospital aboard the helicopter, she did so because she was afraid of flying. No evidence in the record indicates that the SouthFlight employees were ever told that Grubb preferred to be taken to Mobile Infirmary.
Grubb was treated at USAMC and remained hospitalized there for 10 days. During cross-examination, Grubb testified as follows:
 "Q: At any time during the ten days did you request a transfer to the Mobile Infirmary?
 "A: I did speak with them about the insurance and was let out the next day.
 "Q: At any time during the ten days that you were at the hospital did you request a transfer to the Mobile Infirmary?
"A: No, sir." *Page 1052 
This appears to be the only testimony by any witness regarding the issue whether Grubb requested to be transferred to Mobile Infirmary or ever informed employees of USAMC that she preferred to be treated elsewhere.
After she was discharged, Grubb made several return visits for additional treatment by the doctor who had treated her while she was hospitalized. Grubb's insurance carrier paid USAMC for 80% of the charges that accrued during her hospitalization (including a transportation charge for the SouthFlight service).[1] When Grubb subsequently failed to make payments on the balance due, USAMC sued her in the District Court of Mobile County. The district court ruled in favor of USAMC, and Grubb appealed for trial de novo in the circuit court.
At the close of the evidence in the trial in the circuit court, USAMC moved for a directed verdict.[2] The trial judge denied that motion. The jury returned a verdict for Grubb, and the trial judge entered a judgment based on that verdict. USAMC then filed a motion for a JNOV,[3] which the trial court also denied.
USAMC appealed, arguing that the trial judge had erred in denying its directed-verdict and JNOV motions. The Court of Civil Appeals affirmed, holding that the evidence presented a disputed fact issue as to whether Grubb had expressed a lack of consent to be treated at USAMC.
A party moving for a directed verdict asserts, implicitly, that he does not believe the evidence is sufficient to support a judgment for his opponent. See, Rule 50(a), Ala.R.Civ.P. As we have held, a motion for a JNOV "permits the trial court to revisit its earlier ruling denying the motion for directed verdict." Alabama Power Co. v. Williams, 570 So.2d 589, 591 (Ala. 1990). The key question facing a trial judge presented with either of these motions is "whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution." Hosea O. Weaver Sons, Inc. v. Towner, 663 So.2d 892, 894 (Ala. 1995). For the nonmovant to survive such a motion, and for the case to be submitted to a jury, there must be before the court substantial evidence creating a question of fact. See, id. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989); see Towner (quoting West) and see also § 12-21-12, Ala. Code 1975. Also, we must review a ruling on a motion for a JNOV or a motion for a directed verdict by examining "all the evidence in a light most favorable to the nonmovant and [entertaining] such reasonable inferences from the evidence as the jury would have been free to draw." Towner, 663 So.2d at 894.
We are also mindful that this Court has previously held:
 "It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered."
Hendrix, Mohr Yardley, Inc. v. City of Daphne, 359 So.2d 792,795 (Ala. 1978). The questions then, in this present case, are whether the evidence reflects that Grubb knowingly accepted the services *Page 1053 
provided by USAMC and whether the charges for those services are reasonable.
We have reviewed the evidence in the light most favorable to Grubb, but we nonetheless conclude that the evidence created no genuine issue of material fact in this case. The record clearly reflects that Grubb knowingly accepted the services provided to her by USAMC. Nothing in the record indicates that Grubb or anyone else ever informed USAMC or any of its agents that Grubb preferred to be treated at Mobile Infirmary or even that she simply did not wish to be treated at USAMC.
With regard to the question whether the charges by USAMC were reasonable, the only evidence related to that question came from Deanne Stanley, who at the time of trial was USAMC's acting director of business services. She testified that USAMC's charges for services rendered to Grubb were reasonable. Grubb presented no evidence to contradict Stanley's testimony.
We conclude that the evidence presented no genuine issue of material fact for a jury to resolve and that under the evidence USAMC was entitled to a judgment as a matter of law. Accordingly, we reverse the judgment of the Court of Civil Appeals, which had affirmed the trial court's denial of USAMC's motions for directed verdict and JNOV. The Court of Civil Appeals is instructed to remand the case for the trial court, after conducting such proceedings as are necessary to compute the applicable interest, to enter a judgment as a matter of law[4] in favor of USAMC.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Hooper, C.J., and Houston, Kennedy, Cook, See, Lyons, and Brown, JJ., concur.
[1] It is unclear from the record whether the insurance carrier paid USAMC anything for the outpatient care Grubb received after her discharge from the hospital.
[2] Rule 50, Ala.R.Civ.P., has renamed the "motion for a directed verdict" as a "motion for a judgment as a matter of law."
[3] Rule 50, Ala.R.Civ.P., has renamed the "motion for a judgment notwithstanding the verdict" as a "renewed motion for a judgment as a matter of law."
[4] See n. 3.