PITTMAN, Judge.
 

 After suffering injuries in a motor-vehicle collision, James Roberts and Virginia Roberts were immediately taken to the University of Alabama Hospital (“the hospital”) for treatment. After their release from treatment, the hospital filed liens pursuant to Ala.Code 1975, § 35-11-370 et seq., which, in pertinent part, provides for the recording of liens “for all reasonable charges for hospital care, treatment and maintenance of an injured person” that attach to “any and all actions, claims, counterclaims and demands accruing to the person to whom such care, treatment or maintenance was furnished,” as well as “all judgments, settlements and settlement agreements entered into by virtue thereof on account of injuries giving rise to such actions, claims, counterclaims, demands, judgments, settlements or settlement agreements and which necessitated such hospital care.” Ala. Code 1975, § 35 — 11— 370.
 

 In September 2005, the Robertses brought a civil action in the Jefferson Circuit Court against two persons who allegedly had proximately caused their injuries and against the Robertses’ uninsured-motorist insurers. In August 2006, at the Robertses’ request, the trial court granted a motion to authorize the addition of the hospital as a defendant in which the Rob-ertses sought a determination of the amount of charges secured by the hospital’s liens; the Robertses also interpleaded two drafts that had been issued by the tortfeasors’ liability insurer that were payable jointly to both the hospital and the Robertses, by and through their attorney. One month later, all claims in the action that had been asserted against parties other than the hospital were dismissed by stipulation. Subsequently, after an ore tenus proceeding, the trial court entered an eight-page judgment stating findings of fact and conclusions of law; that judgment, in pertinent part, declared that the hospital was entitled to liens in the amount of $19,447.46 as to unpaid charges for services provided to James Roberts and $17,806.63 as to unpaid charges for services provided to Virginia Roberts, amounts that excluded a 15% charge that, the trial court determined, was attributable to “the recovery of the unreimbursed cost of providing indigent care to other patients” at the hospital. Only the Rob-ertses have appealed.
 
 [1]
 

 The principal question presented by the parties’ briefs focuses on whether the trial court properly applied that portion of Ala.Code 1975, § 35-11-370, which provides for a hospital lien on the Roberts-es’ tort and insurance recoveries as to
 
 “all reasonable charges
 
 for hospital care, treatment and maintenance of an injured person” (emphasis added), to the facts presented. Whether the hospital is entitled under the statute to a lien as to all the
 
 *515
 
 unpaid charges for which it has billed the Robertses in this case (less the 15% indigent-care-recovery charge not at issue) may properly be deemed a “mixed question” of law and fact.
 
 See,
 
 e.g.,
 
 Marcus v. J.R. Watkins Co.,
 
 279 Ala. 584, 588, 188 So.2d 543, 546 (1966) (whether a foreign corporation is or is not “doing business” in Alabama within the scope of constitutional and statutory provisions governing activities of foreign corporations in Alabama held a mixed question of law and fact);
 
 Pate v. Rasco,
 
 656 So.2d 855, 857 (Ala.Civ.App.1995) (where unsuccessful claimant seeking unemployment compensation had her “residence” within scope of statute governing venue of judicial-review proceeding held a mixed question of law and fact). Appellate courts properly apply a presumption of correctness to factual determinations of trial courts, even in the context of mixed questions of law and fact
 
 (see Pate,
 
 656 So.2d at 857), although determinations on questions of law are properly given no such presumption.
 
 See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Cain,
 
 387 So.2d 195, 197 (Ala.1980) (in order to reverse judgment on issue involving mixed question of law and fact, reviewing court need only conclude “that [it] differ[s] with the trial court, not on the facts, but on its application of the law to those facts”).
 

 The trial court’s judgment fully summarizes the pertinent testimony adduced at trial:
 

 “The Court received testimony from ... a nurse auditor in the Department of Finance for [the hospital]. [The auditor] testified that all of the charges which appeared on the accounts for both plaintiffs were necessary in that all charges were verified to be as a result of a treating physician’s orders, thereby making the services and the charges associated therewith necessary. There was one service rendered for which the audit indicated a proper charge of $200.00 had not been made in the treatment of Plaintiff James M. Roberts.
 

 “The Court also received testimony from [the hospital’s] Manager of Claims and Collections. [The manager] testified as to the procedures by which the hospital liens were prepared and filed in the amount which corresponded to the amounts billed by the said hospital. The Court received into evidence the two liens for each Plaintiff. Due to the payment of $1,000 on each account, the amounts of the liens were established in the testimony as $21,125.45 for Mrs. Roberts and $23,055.84 for Mr. Roberts.
 

 “Finally, the Court received the testimony of [the hospital’s] Director of Reimbursement- [The director] testified that he has been employed by [the hospital] for 3 years in his current capacity after having served 20 years in a similar capacity at [another area hospital]. [The director] testified that he monitors the Blue Cross/Blue Shield reporting and sets the charges for services for the hospital.
 

 “[The director] testified that he set prices on a schedule known as a Charge Master, which is a price list for services rendered by the hospital to inpatients. It is an industry standard to work from the said Charge Master. [The manager] testified that regardless of the means or methods of payment from the patient, the price list is applied uniformly across the board to all patients in order to establish the cost of services rendered. The Charge Master is reviewed and updated annually to set prices according to the market.
 

 “[The director testified that the hospital] provides a substantial amount of uncompensated health care due to its maintenance of a Level I Trauma Unit,
 
 *516
 
 among other services, including the fact that [the hospital] is a research hospital. [The director] testified that as a part of the cost of providing health care to inpatients, a certain portion of operating overhead is applied to each case and that a part of that overhead is the cost of providing health care to patients who are unable to pay for the services. [He] testified that in his opinion 15% of the cost for services rendered to those patients able to pay for their care is attributed to recovery of cost for the hospital of services rendered to those unable to pay.
 

 “On cross-examination, [the director] was questioned with regard to the various amounts that [the hospital] will accept as payment for services. The amounts from governmental benefits such as Medicare and Medicaid were significantly below the amount charged. However, [the director] testified that by law, the hospital must accept these sums in full payment for services rendered to those patients qualified to receive such governmental benefits and the fact of acceptance of such an amount in no way reflects upon the cost or the value of the services rendered to such patients. The alternative to the hospital in such cases, in lieu of accepting payment under a government benefit plan is to receive no payment at all[;] therefore the reduced amount under the government benefit program is accepted in payment by the hospital.
 

 “Likewise, with regard to the amount accepted from a Blue Cross/Blue Shield patient, such amount is paid under a contract between the health insurer and the hospital. By contract, Blue Cross/ Blue Shield conducts an independent audit of the hospital in order to arrive at a per diem cost reimbursement per patient amount. Blue Cross/Blue Shield pays the hospital for treatment of its contract holders based upon this said contract cost reimbursement rate, which[, the director] testified, has many factors taken into consideration other than the cost of providing services to any single Blue Cross patient. In some cases, the per diem reimbursement rate is greater than the cost of providing services and in other cases, the said per diem rate is less than the cost of providing services. However, in order to be an institution which is qualified to receive Blue Cross reimbursement for treatment of Blue Cross patients, which is a vast majority of individuals in Alabama, the contract rate must be accepted. Again, [the director] testified that [the hospital’s] willingness to accept Blue Cross reimbursement as payment for hospital services rendered to a Blue Cross patient [is based upon] many other factors and considerations other than the cost or the value of the services rendered to the said Blue Cross patient.”
 

 The trial court’s judgment declaring the amount of the hospital liens did not wholly embrace the hospital’s position that “all charges incurred by [a] hospital institution, including unreimbursed charges for the treatment of the indigent and those unable to pay, should be included as reasonable charges for the hospital care provided to any patient.” Specifically, the trial court deducted from the lien amounts “15% of the charges” levied by the hospital, an amount that was, according to the trial court, attributable “to the recovery of the unreimbursed cost of providing indigent care to other patients” rather than to the reasonable value of the services rendered to the Robertses. However, the trial court, in determining the amount of the hospital liens to be all the hospital’s billed charges less (1) that 15% additional charge, and (2) $2,000 representing medi
 
 *517
 
 cal-payments insurance benefits previously disbursed on behalf of the Robertses to the hospital, necessarily concluded that the charges assessed by the hospital for services provided to the Robertses that had remained unpaid on the trial date,
 
 apart from
 
 the 15% additional charge, represented the “reasonable value” of the hospital’s care, treatment, and maintenance of the Robertses.
 
 See Ex parte University of South Alabama,
 
 761 So.2d 240, 244 (Ala.1999) (noting that the hospital-lien statute “giv[es] a hospital an automatic hen for the
 
 reasonable value
 
 of its services” in order “to induce it to receive a patient injured in an aceident[ ] without first considering whether the patient will be able to pay the medical bills incurred” (emphasis added)).
 

 The trial court’s determination, based upon the evidence adduced at trial that the hospital had billed the Robertses only for services that were medically necessary and that the unenhanced charges for those services had been determined by reference to a uniform, industry-standard pricing list that is updated annually, was consistent with Alabama precedents indicating that evidence from hospital personnel concerning the reasonableness of treatment rendered and charges billed to patients is competent to demonstrate “reasonable charges” to which a hospital lien, under § 35-11-870, will extend.
 
 See Johnson v. Health Care Auth. of Huntsville,
 
 660 So.2d 1017, 1018-19 (Ala.Civ.App.1995) (affirming summary judgment for hospital operator on claim that charges included in hospital lien were unreasonable based upon unrebutted affidavits of hospital’s nurse manager and budget coordinator concerning reasonableness of charges);
 
 see also Ex parte University of South Alabama,
 
 737 So.2d 1049, 1053 (Ala.1999) (unrebutted testimony of acting director of hospital’s business services that hospital’s charges for services rendered to injured party were reasonable was evidence that supported hospital’s entitlement to judgment as a matter of law on quantum-meruit claim). Thus, the hospital made a prima facie showing of entitlement to hospital liens in the amounts determined by the trial court.
 

 In an attempt to rebut the hospital’s evidentiary showing, counsel for the Rob-ertses sought to direct the trial court’s attention to the hospital’s practice of accepting less than the full amount of its billed rates from patients having contractual or legal relationships with third-party payors, such as Blue Cross and Blue Shield, Medicare, and Medicaid. For that evidence to be material and relevant, it would have had to bear upon the question of the “reasonable value” of the hospital’s services. However, as the trial court’s summation of the testimony of the hospital’s director of reimbursement given on cross-examination would indicate, that court deemed such evidence to be of no probative value concerning the ultimate question of the “reasonable charges” assessed against the Robertses.
 

 The trial court’s decision not to deem persuasive evidence of sums paid to the hospital under different financing schemes does not amount to reversible error. As the director explained in his testimony, the hospital’s acceptance of lower payments from Blue Cross and Blue Shield, Medicare, and Medicaid patients stemmed from legal and contractual requirements that applied solely to those classes of patients. It is undisputed that the Robertses were not covered under a Blue Cross and Blue Shield plan, and there is no evidence indicating that they were covered under Medicaid. Although the Robertses
 
 were
 
 entitled to benefits under Medicare, the hospital had a clear right under federal law to reject a lesser payment under Medicare for the services
 
 *518
 
 it provided to the Robertses in lieu of seeking a larger payment from settlement proceeds.
 
 See generally Joiner v. Medical Ctr. East, Inc.,
 
 709 So.2d 1209, 1221 (Ala.1998) (recognizing right of hospital to obtain full payment of its charges from proceeds of patient’s settlement with tortfea-sor notwithstanding fact that settlement occurred more than 120 days after patient’s discharge from hospital).
 
 [2]
 

 Our conclusion that the trial court could properly disregard evidence of the hospital’s practice of accepting less than full reimbursement from third-party payors in other contexts is consistent with decisions in other states. For example, in
 
 Parnell v. Madonna Rehabilitation Hospital, Inc.,
 
 258 Neb. 125, 602 N.W.2d 461 (1999), the Nebraska Supreme Court rejected as inconsistent with that state’s hospital-lien statutes an argument similar to that made by the Robertses, i.e., that the “usual and customary charges” of the hospital treating a patient injured by a tortfeasor should be less than the billed charges:
 

 “Parnell contends that because Madonna often receives less than the full amount of its billings for services provided to patients covered by medicaid, medicare, and workers’ compensation, the ‘usual and customary charges’ of the hospital are less than the amount that it bills to patients.
 

 “In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Section 52 — 401[, Neb.Rev.Stat.,] plainly states that a lien attaches to ‘the usual and customary
 
 charges
 
 ’ of the service provider. (Emphasis supplied [in
 
 Parnell
 
 ].) However, Parnell’s interpretation would require that the amounts actually collected by a service provider be considered instead of the amount charged. Such an interpretation is contrary to the plain language of the statute.”
 

 Parnell,
 
 258 Neb. at 129-30, 602 N.W.2d at 464 (citations omitted);
 
 see also Parnell v. Good Samaritan Health Sys., Inc.,
 
 260 Neb. 877, 880, 620 N.W.2d 354, 357 (2000) (declining to reconsider that principle of law). To like effect is
 
 Hillsborough County Hospital Authority v. Fernandez,
 
 664 So.2d 1071 (Fla.Dist.Ct.App.1995), in which a Florida appellate court held that evidence of discounts extended by a hospital to patients enrolled in health-maintenance organizations and preferred-provider organizations and to patients eligible for Medicare, Medicaid, and workers’ compensation benefits did not sufficiently support a judgment reducing a hospital lien extending to “all reasonable charges” by 38 percent.
 

 We note that other courts have held improper certain hospitals’ practices of “balance billing” patients enrolled in health-maintenance or preferred-provider organizations or receiving medical benefits pursuant to a governmental entitlement so that the hospitals might recover the difference between the lower contract or legal rate of reimbursement and those hospitals’ usual charges.
 
 See,
 
 e.g.,
 
 Parnell v. Adventist Health Sys./West,
 
 35 Cal.4th 595, 609, 109 P.3d 69, 79, 26 Cal.Rptr.3d 569, 581 (2005). However, we are aware of no reported case, and the Robertses have cited none, in which a patient
 
 outside
 
 such organizational or governmental coverages
 
 *519
 
 has been allowed to take advantage of such preferred rates of reimbursement in order to retain a greater share of a tort recovery at the expense of a treating hospital.
 

 The judgment of the trial court is affirmed. The motion to strike the appendix to the hospital’s brief is denied as moot.
 

 AFFIRMED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Although this court, in
 
 University of South Alabama Hospitals v. Blackmon,
 
 987 So.2d 1138 (Ala.Civ.App.2007), held that an order purporting to determine the amount of a hospital lien as to proceeds of settlement of tort claims is void when the claims had not been reduced to a judgment at the time of the order, this case may properly be distinguished from
 
 Blackmon
 
 because (1) the Robertses in-terpleaded the drafts that had been issued by the liability insurer of the tortfeasors and that had represented the amounts of the claimed hospital liens, (2) the hospital was expressly added as a party in this case, and (3) the trial court in this case entered its judgment determining the amount of the pertinent hospital liens
 
 after
 
 the Robertses' tort claims had been settled and dismissed.
 

 [2]
 

 .
 
 Because the hospital had (and exercised) the option not to accept Medicare benefits as full payment in the circumstances of this case, the trial court’s statement that the Robertses were not "qualified to receive government benefits,” although overbroad, amounts to error without injury.
 
 See
 
 Rule 45, Ala. R.App. P.