THOMPSON, Presiding Judge.
University of South Alabama Hospitals (“USAH”) appeals from the trial court’s judgment holding that $32,274 was a reasonable charge for certain medical services USAH rendered to Angela Blackmon. In the judgment, the trial court ordered Blackmon to pay the $32,274 to USAH in satisfaction of a hospital lien USAH had against her.
In July 2004, Blackmon was injured when the van she was driving rolled over after one of the tires on the van exploded. Blackmon was transported from the accident scene on Interstate 65 near Atmore *1259 to USAH, where she had surgery and was hospitalized for more than two weeks. Blackmon was uninsured at the time, and she did not have sufficient financial resources to pay for USAH’s services. Pursuant to § 35-11-370, Ala.Code 1975, USAH filed a hospital lien against Black-mon for $53,449.20 to recover payment for those services. At trial, USAH presented evidence indicating that an audit of Black-mon’s account had revealed that Blackmon was due certain credits and that the balance she owed on the lien was $52,052.95.
In February 2005, Blackmon was again hospitalized at USAH, and she underwent a second surgery.[1] The charges for the services rendered during that hospitalization totaled $23,843.63. USAH filed a second lien against Blackmon. By that time, however, Blackmon was eligible to receive benefits from Medicaid. Medicaid satisfied the second lien with a payment of $10,981.58.
Blackmon sued the manufacturer of the tire that had exploded, and the parties in that case reached a confidential settlement agreement. Pursuant to the agreement, $48,000 was deposited with the clerk of the trial court pending a determination of the “reasonable” amount of charges made the basis for USAH’s first lien against Black-mon. The trial court held a hearing on the issue of the reasonableness of USAH’s charges as part of Blackmon’s action against the tire manufacturer. The trial court determined that $24,586 was a reasonable amount for Blackmon to pay for USAH’s treatment and set USAH’s lien at that amount. USAH appealed from that judgment. This court dismissed the appeal, holding that the trial court had lacked subject-matter jurisdiction to determine the amount of the lien because the settlement of Blackmon’s claims against the tire manufacturer, to which USAH’s lien related, had not been reduced to a judgment, as required by § 35-11-373, Ala.Code 1975. University of South Alabama Hosps. v. Blackmon, 987 So.2d 1138, 1142 (Ala.Civ.App.2007). USAH then filed the instant action seeking a declaration of the reasonable value of the services rendered to Blackmon during her first hospitalization.
At trial, USAH’s credit and collections manager, Teresa Englestead, testified that, like all hospitals, USAH uses a table known as the “Charge Master,” which is a confidential list of the charges for each item and service the hospital provides. USAH’s Charge Master itemizes approximately 12,000 separate charges. Engle-stead testified that, based upon her training and experience, she believed that the charges listed on the Charge Master were reasonable. On cross-examination, Engle-stead said that if a charge appears on the Charge Master, then it is reasonable.
Englestead said that in October 2004, three months after Blackmon’s first surgery and hospitalization, an outside audit was conducted on all USAH’s charges listed on the Charge Master. None of the charges billed to Blackmon were reduced as a result of that audit. In fact, four charges were increased. Englestead testified that Joan Platt, a nurse auditor who works for USAH, reviewed Blackmon’s account and determined that every charge was confirmed by a treating physician’s order.[2] As a result of Platt’s audit, however, USAH reduced Blackmon’s charges by more than $1,000.
*1260 Englestead verified that the cost to the hospital for a rod that was implanted in Blackmon’s arm was $2,085 and that USAH charged Blackmon $5,200 for the rod. She also acknowledged that USAH, a not-for-profit hospital, has a charge markup of 221%, meaning that it charges patients more than double the cost it pays for items. Englestead said that she gives uninsured patients a discount as a matter of course because, she said, to do so is reasonable, fair, and customary. She also testified that she had offered Blackmon a 30% discount on the charges, “because that’s the same discount the State of Alabama gets for worker’s comp.” Engle-stead said that Blackmon’s attorney had turned down that offer.
Donald Ching, the director of USAH’s financial systems, testified that, based upon his experience, the charges listed on the Charge Master were reasonable. He could not identify the charge amount for individual items, but, he said, he thought “the system” that developed the charges by applying “a factor to the cost of the hospital’s operations” was reasonable. He said that the system “produces reasonable charges every time.” Given the examples of a $1 band-aid that had been marked up 1,000% and a 10-cent Ambien sleeping pill for which USAH charged $9, Ching said he believed that those charges were reasonable.
All patients are charged the same amount for the same services. However, Ching said, approximately 90% of USAH’s “large payors” — Medicare and Medicaid, private insurance companies such as Blue Cross/Blue Shield and Aetna, and managed-care plans such as United Health Care — are not required to pay the full amount of the charges. Ching also testified that if an uninsured patient was willing to pay his or her bill, that patient was generally given a discount.
As to how USAH’s charges compared to those of other hospitals, Ching said that USAH’s “cost-to-charge” ratio was 227%; he stated that the average ratio for Alabama hospitals is more than 300% and that the national average is 245%. Ching said that USAH’s charges are less than those of other hospitals in Mobile County.
After the hearing, the trial court determined that $32,274 was a reasonable fee for the medical services USAH had provided to Blackmon, and it ordered that amount to be paid to USAH out of the funds being held by the circuit clerk. USAH appealed, contending that there was no factual or legal basis to support the trial court’s determination that $32,274 constituted reasonable charges in this case.
The hospital-lien statute reads as follows:
“Any person, firm, hospital authority or corporation operating a hospital in this state shall have a lien for all reasonable charges for hospital care, treatment and maintenance of an injured person who entered such hospital within one week after receiving such injuries, upon any and all actions, claims, counterclaims and demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person, and upon all judgments, settlements and settlement agreements entered into by virtue thereof on account of injuries giving rise to such actions, claims, counterclaims, demands, judgments, settlements or settlement agreements and which necessitated such hospital care, subject, however, to any attorney’s lien.”
§ 35-11-370 (emphasis added). At the hearing, Blackmon conceded that the lien had been properly filed; she challenges only the reasonableness of USAH’s charges.
*1261 Whether § 35-11-370 entitles USAH to collect all the unpaid charges for which it has billed Blackmon “may properly be deemed a ‘mixed question’ of law and fact.” Roberts v. University of Alabama Hosp., 27 So.3d 512, 515 (Ala.Civ.App. 2008).
“Appellate courts properly apply a presumption of correctness to factual determinations of trial courts, even in the context of mixed questions of law and fact (see Pate [v. Rasco], 656 So.2d [855] at 857 [(Ala.Civ.App.1995)]), although determinations on questions of law are properly given no such presumption. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Cain, 387 So.2d 195, 197 (Ala.1980) (in order to reverse judgment on issue involving mixed question of law and fact, reviewing court need only conclude ‘that [it] differ[s] with the trial court, not on the facts, but on its application of the law to those facts’).”
Roberts, 27 So.3d at 515.
The facts in Roberts are similar to those of the instant case. James and Virginia Roberts were in a motor-vehicle accident in which the driver of a second vehicle apparently was at fault. The Robertses were immediately transported to the University of Alabama Hospital for treatment. To cover the unpaid charges for services provided to the Robertses, the hospital placed a lien on any money the Robertses might recover from the tortfeasor who had caused the accident. Id. at 514.
At issue in Roberts was what constituted “reasonable charges” for the care the hospital had provided. The hospital presented evidence indicating that it had billed the Robertses only for services that were medically necessary and that the charges for those services had been the charges set forth on the hospital’s Charge Master. Citing prior caselaw, this court held that
“evidence from hospital personnel concerning the reasonableness of treatment rendered and charges billed to patients is competent to demonstrate ‘reasonable charges’ to which a hospital lien, under § 35-11-370, will extend. See Johnson v. Health Care Auth. of Huntsville, 660 So.2d 1017, 1018-19 (Ala.Civ.App.1995) (affirming summary judgment for hospital operator on claim that charges included in hospital lien were unreasonable based upon unrebutted affidavits of hospital’s nurse manager and budget coordinator concerning reasonableness of charges); see also Ex parte University of South Alabama, 737 So.2d 1049, 1053 (Ala.1999) (unrebutted testimony of acting director of hospital’s business services that hospital’s charges for services rendered to injured party were reasonable was evidence that supported hospital’s entitlement to judgment as a matter of law on quantum-meruit claim). Thus, the hospital made a prima facie showing of entitlement to hospital hens in the amounts determined by the trial court.”
Roberts, 27 So.3d at 517.
To rebut the hospital’s assertion that its charges were reasonable, the Robertses elicited testimony that the hospital accepted less than the full amount charged to patients who were insured by commercial health-insurance carriers such as Blue Cross/Blue Shield and government payors such as Medicare and Medicaid. The trial court, however, “deemed such evidence to be of no probative value concerning the ultimate question of the ‘reasonable charges’ assessed against the Robertses.” Id. at 517. This court affirmed the trial court’s decision to preclude consideration of the amounts third-party payors could pay hospitals to satisfy their insureds’ bills. We explained that holding as follows:
*1262 “The trial court’s decision not to deem persuasive evidence of sums paid to the hospital under different financing schemes does not amount to reversible error. As the [hospital’s financial] director explained in his testimony, the hospital’s acceptance of lower payments from Blue Cross and Blue Shield, Medicare, and Medicaid patients stemmed from legal and contractual requirements that applied solely to those classes of patients....
“Our conclusion that the trial court could properly disregard evidence of the hospital’s practice of accepting less than full reimbursement from third-party payors in other contexts is consistent with decisions in other states. For example, in Parnell v. Madonna Rehabilitation Hospital, Inc., 258 Neb. 125, 602 N.W.2d 461 (1999), the Nebraska Supreme Court rejected as inconsistent with that state’s hospital-lien statutes an argument similar to that made by the Robertses, i.e., that the ‘usual and customary charges’ of the hospital treating a patient injured by a tortfeasor should be less than the billed charges:
“ ‘Parnell contends that because Madonna often receives less than the full amount of its billings for services provided to patients covered by medicaid, medicare, and workers’ compensation, the “usual and customary charges” of the hospital are less than the amount that it bills to patients.
“ ‘In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Section 52-401[, Neb.Rev.Stat.,] plainly states that a lien attaches to “the usual and customary charges ” of the service provider. (Emphasis supplied [in Parnell].) However, Parnell’s interpretation would require that the amounts actually collected by a service provider be considered instead of the amount charged. Such an interpretation is contrary to the plain language of the statute.’
“Parnell, 258 Neb. at 129-80, 602 N.W.2d at 464 (citations omitted); see also Parnell v. Good Samaritan Health Sys., Inc., 260 Neb. 877, 880, 620 N.W.2d 854, 357 (2000) (declining to reconsider that principle of law). To like effect is Hillsborough County Hospital Authority v. Fernandez, 664 So.2d 1071 (Fla.Dist.Ct.App.1995), in which a Florida appellate court held that evidence of discounts extended by a hospital to patients enrolled in health-maintenance organizations and preferred-provider organizations and to patients eligible for Medicare, Medicaid, and workers’ compensation benefits did not sufficiently support a judgment reducing a hospital lien extending to ‘all reasonable charges’ by 38 percent.
“We note that other courts have held improper certain hospitals’ practices of ‘balance billing’ patients enrolled in health-maintenance or preferred-provider organizations or receiving medical benefits pursuant to a governmental entitlement so that the hospitals might recover the difference between the lower contract or legal rate of reimbursement and those hospitals’ usual charges. See, e.g., Parnell v. Adventist Health Sys./West, 35 Cal.4th 595, 609, 109 P.3d 69, 79, 26 Cal.Rptr.3d 569, 581 (2005). However, we are aware of no reported case, and the Robertses have cited none, in which a patient outside such organizational or governmental coverages has been allowed to take advantage of such preferred rates of reimbursement in order to retain a greater share of a tort *1263 recovery at the expense of a treating hospital.”
Roberts, 27 So.3d at 517-519.
In this case, the record provides no other basis for the trial court’s determination of what constituted a reasonable total charge except for the preferred rates of reimbursement enjoyed by governmental groups such as Medicaid and Medicare and by large preferred-provider payors such as Blue Cross/Blue Shield. As stated by the Roberts court, we are aware of no reported cases in Alabama in which a patient not covered by insurance has been allowed to use those preferred rates as proof that the charges billed to them were unreasonable.
In Hillsborough County (Florida) Hospital Authority v. Fernandez, 664 So.2d 1071 (Fla.Dist.Ct.App.1995), Tampa General Hospital argued that the trial court had erred in finding the charges it had billed to a private-pay patient were unreasonable and in reducing its lien by 38%. At trial, the patient had argued that the charges the hospital had levied against her were unreasonable because managed-care pay-ors received discounts for the plan participant. Id. at 1071-72. The Florida appellate court agreed with the hospital and held, without discussion, that evidence of contractual discounts enjoyed by managed-care payors, standing alone, was insufficient to prove that the hospital’s charges were unreasonable.
In Ex parte University of South Alabama, 737 So.2d 1049, 1053 (Ala.1999), our supreme court held that unrebutted testimony from the hospital’s acting director of business services that the hospital’s charges for services rendered to the patient were reasonable was sufficient to sustain a summary judgment in favor of the hospital on the issue of the reasonableness of those charges. Likewise, in Joiner v. Medical Center East, Inc., 709 So.2d 1209, 1221-22 (Ala.1998), our supreme court determined that the hospital had made a prima facie showing that its charges were reasonable when the director of patient accounts testified that the claimed charges were reasonable. Because the patient presented no evidence to rebut that prima facie showing, our supreme court affirmed the summary judgment disbursing to the hospital the amount of the charges assessed.
In this case, USAH presented evidence indicating that the lien against Blackmon was based upon charges listed in USAH’s Charge Master and that those charges had been audited and were reasonable. USAH also offered evidence indicating that its cost-to-charge ratio was in line with — if not lower than — the cost-to-charge ratio of other hospitals in its area. In addition to showing the discounts provided to patients whose charges were paid by insurance or Medicaid or Medicare, Blackmon presented evidence of a substantial markup on some of the items for which she was charged; however, there was no evidence tending to indicate that USAH’s markups were unreasonable.
Because Blackmon presented no evidence to rebut USAH’s showing that its charges were reasonable, the trial court had no basis upon which to reduce the charges made the basis of USAH’s lien against Blackmon. Accordingly, the judgment setting the hospital’s reasonable charges at $32,274, approximately 62% of the amount of USAH’s lien against Black-mon, is reversed, and the cause is remanded for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs specially.

. Although the record is not clear, it appears from Blackmon's brief that the second surgery was related to the July 2004 accident.

. The parties stipulated that Englestead could testily to the results of the audit that Platt had performed.