THOMAS, Judge.
Lori H. Elmore (“the mother”) and Richard Steele King (“the father”) were married in 1987 and divorced by a judgment entered in 2004 by the Jefferson Circuit Court. There are three children of the marriage: Harrison, born in 1991; Sarah, born in 1993; and Connor, born in 1996. Harrison, Sarah, and Connor are referred to collectively as “the children”; however, we note that the children are now adults. The circuit court incorporated the parties’ agreement into the divorce judgment, which reads, in pertinent part:
“8. College Education
“[The father] shall pay for each child the following expenses for a college or university undergraduate education: tuition, room, board, books, schools fees, clothing, transportation and a reasonable allowance at a cost equivalent to that at Auburn University in Auburn, Alabama. ... [The fatherj’s obligation shall continue until a child completes his or her undergraduate degree, or reaches the age of twenty-three (23) years whichever event shall first occurj[1]]
[[Image here]]
“13. Acknowledgment
“[The father] and [the mother] respectfully acknowledge that each has consulted counsel of his or her choosing, understands the facts and undertakings contained in this Agreement, that they are satisfied with the terms thereof, and with such knowledge and understanding this Agreement is executed freely and voluntarily by each of them.”
In 2010 the father filed a petition seeking a modification of the divorce judgment. On May 17, 2010, the circuit court entered *221 an order (“the 2010 consent order”), incorporating another agreement of the parties. The 2010 consent order reads, in pertinent part:
“6. [P]aragraph 8 (College Education) of the parties’ Agreement ratified by the Final judgment of Divorce shall remain in full force and effect. However, the parties shall further abide by the amendment attached hereto as Exhibit 2 (signed by both'parties and notarized), as the Order of this court as if set out fully herein.”
Exhibit 2 contains details regarding how the children’s college expenses would be funded, including noting that Elmer Harris, the children’s maternal grandfather, had “offered to help fund the three children’s college education through his 529 Accounts.” However, the father had agreed to remain responsible for any college costs incurred by the children in addition to those defrayed by funds provided by Harris.
On September 25, 2012, the mother filed, in case no. DR-03-2840.02, a contempt petition against the father alleging certain violations of the 2010 consent order. The father filed an answer to the mother’s petition, and, on December 20, 2012, the father filed, in case no. DR-03-2840.03, a contempt petition against the mother alleging certain violations of the 2010 consent order. That same day, the father filed a petition to modify the 2010 consent order in case no. DR-03-2840.04, seeking the inclusion of certain phrases that would clarify that his support obligation had been limited to the months that the children were “actually enrolled as full-time student[s] at a college or university” and that support was not required to be paid to the mother but that he could, instead, deposit required funds into the children’s banking accounts. On February 1, 2013, the circuit court entered an order consolidating case no. DR-03-2840.02, case no. DR-03-2840.03, and case no. DR-03-2840.04.[2]
After a hearing on February 10 and 12, 2015, the circuit court entered,a judgment on September. 10, 2015. In pertinent part, the circuit court determined that the parties had each refused to pay expenses for which he or she .had been obligated; therefore, it found' both parents in civil contempt and ordered each party to reimburse the other party for specific expenses. The circuit court also required each party to pay his or her own attorney fees and included the following language in the judgment.
“The Court hereby orders ... the [2010] Consent Order and Final Judgment of Divoree to be modified to state that both parties’ obligation to support their children while in college shall terminate upon a child’s failure to maintain a minimum of a ’C’ average. Under applicable law, as well as the facts and circumstances of the present case, the Court deems such relief to be equitable and appropriate.”
On September 25, 2015, the mother filed a postjudgment motion. After a post-judgment hearing, the circuit court entered an order on December 15, 2015, denying the relief requested by the mother. On. January 12, 2016, the mother filed a timely notice of appeal to this court seeking our review of whether the circuit court had erred by modifying the 2010 consent order; by, she says, failing to enforce the 2010 consent order; and by declining to order the father to pay her attorney fees.
*222 First, the mother argues that the circuit court erred by modifying the 2010 consent order to add the “C” average support limitation because, she says, the parties did not request the addition of the “C” average support limitation in their pleadings, or in a Rule 15, Ala. Rule Civ. P., amendment to the pleadings, and, she says, the issue of a “C” average support limitation was not tried by the express or implied consent of the parties. Our determination of whether the circuit court erred by modifying the consent order to' add the “C” average support limitation is a mixed question of law and fact. '
“Appellate courts properly apply a presumption of correctness to factual determinations of trial courts, even in the context of mixed questions of law and fact (see Pate [v. Rasco], 656 So.2d [855,] 857 [(Ala. Civ. App. 1995)], although determinations on questions of law are properly given no such presumption. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Cain, 387 So.2d 195, 197 (Ala. 1980) (in order to reverse judgment on issue involving mixed question of law and fact, reviewing court need only conclude ‘that [it] differ[s] with the trial court, not on the facts, but on its application of the law to those facts’).”
Roberts v. University of Alabama Hosp., 27 So.3d 512, 515 (Ala. Civ. App. 2008).
The mother testified that Harrison had not “do[ne] well [at Auburn University] and had to come home for two semesters.” At the time of the hearing, Harrison was a student at Samford University, and Sarah and Connor were students at Auburn University. It was undisputed that both Harrison and Conner had earned poor grades at Auburn University. However, the mother objected to specific questions regarding grades, and the following colloquy occurred:
“THE COURT: Because—and I will need the attorneys to help me on this. Is there anywhere in the final judgment, the [2010] consent order, that says the children have to maintain any specific— “[The father’s attorney]: No, ma’am. “[The mother’s attorney]:. Not that I’m aware of.; .
“[The father’s attorney]: They are not required by either of these documents to maintain any certain grade point average.
“[The mother’s attorney]: That’s correct.
“THE COURT: Then the objection is sustained.”
The circuit court heard arguments of counsel at-the postjudgment hearing. The mother’s attorney requested that the circuit court amend the judgment to exclude the “C” average support limitation. The father’s attorney conceded that the issue of the “C” average support limitation had not been raised in the parties,’ pleadings; however, the father’s attorney contended that the issue had been tried by the- consent of the parties because, the father’s attorney incorrectly asserted, the mother had failed raise an objection.
“The dispositive issue is whether the trial court erred in modifying the amount of monthly child support and arrearage payments where no petition for modification was filed and there was no oral request for modification. This court has held that, where modification was not sought by written or oral petition or request and the issue was not tried expressly or impliedly with the consent of the parties, fair play and due process dictate a reversal. Parnell v. Parnell, 500 So.2d 1137 (Ala. Civ. App. 1986); Price v. Price, 442 So.2d 121 (Ala. Civ. App. 1983).”
Roberson v. Roberson, 558 So.2d 946, 947 (Ala. Civ. App. 1990). Our review of the record reveals that there had been no written or oral requests for modification of the 2010 consent order to include a “C” aver *223 age support limitation and that the “C” average support limitation was not tried by the express or implied consent of the parties because the mother successfully objected to questions regarding the children’s grades. Thus, the circuit court abused its discretion by modifying, sua sponte, the 2010 consent order to include the “C” average support limitation,
Next we consider the mother’s argument that the circuit court erred by failing to enforce the 2010 consent order by finding the father in contempt but failing to require him to pay her $58,822.89, which, she contends, represented his portion of the children’s expenses.pursuant to the 2010 consent order. The circuit court held the father in civil contempt and ordered him to reimburse the mother $600 for Connor’s textbooks and $998.08 for half of the children’s uncovered medical expenses (excluding the costs associated with certain counseling sessions because the mother had failed to consult the father regarding the medical decision to enroll them in counseling, as required by the 2010 consent order),
“We review the trial court’s finding of civil contempt under the -following well settled standard of review.
“ ‘The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court’s contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by. the evidence. Brown v. Brown, 960 So.2d 712, 716 (Ala. Civ. App. 2006) (affirming a trial court’s decision not to hold a parent in contempt for failure to pay child support when the parent testified that he had deducted from his monthly child-support payment the amount he had expended to buy clothes for the children).’
“Poh v. Poh, 64 So.3d 49, 61 (Ala. Civ. App. 2010).
“ ‘Rule 70A, Ala. R. Civ. P., has governed contempt proceedings in civil actions since July 11, 1994. Rule 70A(a)(2)(D) defines “civil contempt” as a “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its ■ nature is still capable of being complied with.” ’
“Stamm v. Stamm, 922 So.2d 920, 924 (Ala. Civ. App. 2004). Moreover, in order to hold a party in contempt under Rule 70A(a)(2)(D), the trial court must find that the party willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So.2d 200, 205 (Ala. Civ. App. 2002).”
Kreitzberg v. Kreitzberg, 131 So.3d 612, 627-28 (Ala. Civ. App. 2018).
The testimony presented revealed that the mother had routinely provided the father with monthly “invoices” detailing expenses that she had determined that he owed based upon her interpretation of the 2010 consent order. The father had neither communicated with the mother nor provided the invoiced amounts to her. The mother had routinely applied the alleged unpaid balances to the next month’s alleged monthly expenses to generate the next monthly “invoice.” The father testified that the mother’s “invoices” had been inaccurate, that he had paid bills and provided funds to the children of which the mother had been unaware, .and that, the mother had failed to gain his consent for certain expenses of more than $100 as required by the 2010 consent order. For example, the father testified that the mother had inaccurately “billed” him for Harrison’s room, board, and automobile expenses at a time when Harrison was an adult and not enrolled in college and that, when Harrison *224 had been a student at Samford University, the mother had “billed” the father for costs that were not equivalent to the costs associated with attending Auburn University.
In their appellate briefs, the parties concede that the testimony presented regarding the payment of the children’s expenses was disputed; however, the mother asserts that her testimony and documentary evidence was more credible than that of the father. The mother argues:
“The [mother’s] Exhibit 4 is specific and consists of monthly invoices to the [father], for charges incurred for the benefit of the children. ... As to his evidence of what he has paid that is included on [the mother’s Exhibit 4, his evidence is thin and vague. He testified generally about what he paid but did not specify amounts.”
In Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala. Civ. App. 1999), we explained:
“Where a trial court receives conflicting ore tenus evidence, its judgment based on that evidence is presumed correct, and this court will not reverse such a judgment absent a finding of a plain and palpable abuse of discretion. Brannon v. Brannon, 477 So.2d 445 (Ala. Civ. App. 1985). The presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor. Hall v. Mazzone, 486 So.2d 408 (Ala. 1986).”
The circuit court did not plainly and palpably abuse its discretion by refusing to require the father to pay the sum requested by the mother.
Finally, we consider whether the circuit court erred by declining to order the father to pay the mother’s attorney fees.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala. Civ. App. 1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala. Civ. App. 1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala. Civ. App. 1986).”
Glover v. Glover, 678 So.2d 174, 176 (Ala. Civ. App. 1996). The circuit court found the mother to be in civil contempt; thus, the circuit court did not abuse its discretion by declining to order the father to pay her attorney fees.
In conclusion, the judgment is reversed insofar as it modified the 2010 consent order to include the “C” average support limitation, and the cause is remanded with instructions for the circuit court remove the language terminating the parties’ obligations to support the children while in college upon a child’s failure to maintain a minimum of a “C” average. In all other respects, the judgment of the circuit court is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

. We note that the parties had agreed to provide a number of postminority expenses for the benefit of the children; thus, correctly, neither the circuit court nor the parties have referenced Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), overruled by Ex parte Christopher, 145 So.3d 60 (Ala. 2013).

. Before the hearing on these matters, the circuit court entered an order on the father’s petition to modify in case no. DR-03-2840.04 in which it concluded that the 2010 consent order was unambiguous and that, therefore, no modification was necessary.